Brenda WILLIAMS, Plaintiff,

v.

John J. CALLAHAN, Commissioner of Social Security, Defendant.

No. 97 CV 4363(NG).

United States District Court,
E.D. New York.

Dec. 15, 1998.

Brenda William, pro se.

Kevin Mulry, United States Attorney's Office, Civil Division, Brooklyn, NY, for Defendant.

**ORDER**

GERSHON, District Judge.

Pro se plaintiff Brenda Williams brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits. Defendant moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Plaintiff filed an application for Supplemental Security Income on September 23, 1994. Following the denial of her application, an administrative hearing was held on July 26, 1995 before Administrative Law Judge ("ALJ") David Nisnewitz. The ALJ found that plaintiff is able to return to her past relevant work and, thus, that she is not disabled within the meaning of the Act. The Appeals Council denied plaintiff's request for review on April 28, 1997, and plaintiff commenced this action.

### Facts

*Plaintiff's Background*

Plaintiff was born in Alabama on September 20, 1950. She moved to New York in 1954 and completed a college education at Brooklyn College, but never picked up her degree because she still owed money to the college at the time of her graduation. Tr. 29–30.[1] She worked as a clerk at the United States Postal Service for 17 years. According to her Disability Report dated September 23, 1994, her former work entailed approximately one hour of walking, one hour of standing, and seven hours of sitting. She estimated that the heaviest weight that she lifted was fifty pounds and that she frequently lifted twenty-five pounds. Tr. 108. Her tasks mainly involved operating post office machines, sorting mail, and serving as a window clerk. Tr. 107. Plaintiff appeared pro se at the hearing and was accompanied by her mother, who testified on her daughter's behalf. At the time of the hearing, plaintiff was forty-five years old. Plaintiff testified that she was terminated in 1990 for falsifying medical documents submitted to her supervisors in connection with a sick day off from work, and she has not worked since then. Tr. 30–31. Plaintiff proffered records which indicate that the Postal Service had sent her to its psychiatrist, who prescribed medication (Sinequan) for manic-depression. Tr. 108.

Plaintiff testified that she began using crack for the first time after she was terminated from her job and simultaneously experienced severe depression and the breakup of a relationship of seven year's duration. Tr. 33. Prior to that, plaintiff had also used cocaine and marijuana occasionally in undetermined amounts, but not while on the job. Tr.32. She became addicted to crack and would spend whatever money she could get on drugs. She admitted that she spent all $12,000 of her retirement money in a two month period just on crack. Tr. 34. Plaintiff testified that she has entered into a number of treatment programs and most recently received treatment at a program at the Long Island Consultation Center ending in May 1995. However, she has used crack since then and is presently looking for a new treatment program. Tr. 35. Upon questioning by the ALJ, plaintiff revealed that she had used crack most recently just two weeks prior to the hearing. Tr. 36.

In addition to her ongoing drug problem, plaintiff testified that she presently suffers from bronchitis and mental disorders, and is homeless. Tr. 25. She lost her apartment in December 1994, following a four month term in prison ending in September 1994, and now lives at the Williams Avenue homeless shelter. She is on Public Assistance and receives $100 a month plus $115 in Food Stamps. Tr. 42. Plaintiff was incarcerated at Riker's Island in 1994, where she served four months of a six month sentence for violation of probation for possession of crack Tr. 43. After her release, plaintiff was arrested once again for possession in November 1994, for which she was again put on probation for three years. Tr. 44.

Upon questioning by the ALJ, plaintiff stated that her bronchitis is not preventing her from working, and that "physically speaking there's nothing wrong with me picking up a phone [and working as a receptionist]." Tr. 47–48. Plaintiff testified that the main reasons why she is unable to work are the psychological problems associated with depression and being unable to "do the proper thing instead of going and buying drugs." Tr. 50. She revealed that she was diagnosed with bipolar disorder several years earlier and had been prescribed lithium by Dr. Raymond Tam, a psychiatrist with the Long Island Consultation Center, at the last treatment program she attended. Tr. 50–51. At the time of the hearing, plaintiff was

---

1. Citations refer to pages from the Administrative Transcript.

attempting to get into another program at the Advanced Center for Psychotherapy. Tr. 50. When the ALJ asked her how she spent her time during the day, plaintiff responded that she "watch[s] a little TV or look[s] at a magazine sometimes." Tr. 52.

Plaintiff's mother testified on her daughter's behalf. Mrs. Williams stated that plaintiff comes over to her house about once every week and is often "either shaking, grunting or doing something at all times ... I can't describe it really." Tr. 55. Mrs. Williams testified that she is aware of her daughter's ongoing drug use and that plaintiff often goes back to using illegal drugs when she runs out of medication. Tr. 55–56. When asked by the ALJ if she noticed any other problems "aside from the physical," Mrs. Williams answered, "[m]entally," and stated that plaintiff was "just disturbed and she goes into these crying spells." Tr. 53.

*Medical Evidence*

A doctor at the Montefiore Medical Center at Riker's Island Health Services completed an After Care Letter dated September 10, 1994 regarding Ms. Williams. The doctor, whose name is illegible, noted that plaintiff had been treated for psychological difficulties and a depressed mood. The doctor recommended follow-up treatment of psychotherapy once a week. Tr. 127.

Dr. Peter E. Graham, a medical consultant, conducted a physical examination of plaintiff on November 10, 1994. In his report, he noted that plaintiff's chief complaints were: psychiatric disorder, bronchitis, drug abuse, and heart murmur. Dr. Graham indicated that plaintiff described to him a history of drug abuse for four years, including use of cocaine and crack but no intravenous drugs, despite multiple efforts at treatment in various supervised programs. Plaintiff also described to the doctor a history of depression lasting five years. Dr. Graham noted that plaintiff presently took no medication for this problem, but was previously on Sinequan. At the time of the examination, plaintiff was under the care of a psychiatrist at the Advanced Center for Psychotherapy. Plaintiff told Dr. Graham that she has contemplated but never attempted suicide and has not been hospitalized for mental illness. Dr. Graham

stated that plaintiff conveyed to him her ability to "take care of the normal activities of daily living." Tr. 128.

Dr. Graham further noted plaintiff's five year history of bronchitis and a twenty-eight year history of a heart murmur. Plaintiff told the doctor of a family history of emphysema, and that she had smoked one pack of cigarettes a day for twenty-six years. Tr. 129. Dr. Graham conducted a pulmonary function test, which showed that plaintiff's total forced vital capacity and one second forced expiratory volume improved with medication. Tr. 132. The tests showed that plaintiff had mild to moderate airway obstruction. Tr. 135–40. Upon examination, plaintiff's heart exhibited a grade ⅗ systolic murmur. Tr. 130. Plaintiff was not presently taking any medication for her bronchitis nor the heart murmur, however, and Dr. Graham concluded that plaintiff's past medical history was "unremarkable." Tr. 129. In his final assessment, Dr. Graham stated that plaintiff had bronchitis by history but not clinical bronchospasm; drug abuse by history; a heart murmur; and a psychiatric disorder for which plaintiff needed to see a psychiatrist. Dr. Graham concluded that "patient is able to perform physical activities such as sitting, standing, lifting, carrying and handling of objects, speaking, hearing, and traveling." Tr. 131.

Dr. Allan Brooks, a radiologist, reviewed one frontal chest X-ray of plaintiff on November 10, 1994. According to Dr. Brooks, plaintiff's lungs appeared clear, the costophrenic angles were sharp, and the heart and mediastinum were normal. The doctor noted a mild thoracic scoliosis, and no focal osseous abnormalities were seen. Dr. Brooks concluded that plaintiff did not suffer any acute cardiac or pulmonary disease. Tr. 134.

The Human Resources Administration Housing Placement and Case Management Unit conducted a medical evaluation of plaintiff on December 27, 1994. The chest X-ray and the electrocardiogram of the plaintiff both appeared normal, and the physician noted no limits in plaintiff's physical functional abilities. The medical prognosis revealed that plaintiff suffered from asthma and bron-

chitis, and she currently took Proventil, a bronchodilator, and albuterol. Tr. 141.

Dr. Raymond Tam, plaintiff's treating psychiatrist at the Long Island Consultation Center where plaintiff underwent her most recent treatment program, completed a report on February 9, 1995 based on his observations of plaintiff. Dr. Tam first saw plaintiff on November 21, 1994, and prescribed individual treatment once a week, group therapy twice a week, and psychological monitoring once every three weeks. Tr. 142. His treating diagnosis of plaintiff was that she suffered depression and bipolar disorder, and a history of alcohol abuse (since age 16) and cocaine dependency, now both in remission. Dr. Tam noted that plaintiff was homeless, had been in different treatment programs prior to this one, and was in a depressed mood due to her current circumstances. She had taken Sinequan before, and had been prescribed lithium but had never taken it. Tr. 142. After evaluating plaintiff himself on January 5, 1995, Dr. Tam also prescribed 300 mgs. of lithium. Tr. 142.

Dr. Tam explained that plaintiff had made several earlier attempts at treatment through inpatient and outpatient care since 1991, but apparently completed such treatment only once which was during her incarceration. She told the doctor that she had been discharged from all of the other programs for absenteeism or for conflict with authority figures. Tr. 143. Dr. Tam described plaintiff as well groomed and cooperative, and her speech seemed coherent and pressured, with no psychosis elicited. Plaintiff cried at times but she exhibited appropriate affect. Tr. 143. Dr. Tam determined plaintiff's memory to be poor, her information fair, and her attention and concentration somewhat adversely affected by her history of marijuana use. Her insight and judgment seemed fair to limited. Tr. 144.

As for plaintiff's current functional abilities, Dr. Tam stated that plaintiff was a self-described "neat freak" and uses cleaning as therapy. Plaintiff told Dr. Tam that she would attempt to go food shopping but instead would be waylaid by local drug dealers. She reported feeling fearful when taking the subway because of a robbery on the subway two years prior. When asked to describe plaintiff's ability to function in a work setting and any difficulties she might experience, Dr. Tam stated that plaintiff presented herself as a victim and believed that authority figures wanted to "get her out" of her former job and the various treatment programs from which she was discharged. Dr. Tam wrote that plaintiff seemed to have difficulty working with peers and supervisors. Tr. 144.

When asked to evaluate if plaintiff was capable of handling disability benefits, Dr. Tam noted that plaintiff "has only had one episode of sobriety for [a] six month duration and has [a] history of spending funds on drugs." Tr. 145. Dr. Tam described plaintiff's ability to do work related mental activities to be limited in all of the following ways: 1) understanding and memory, 2) sustained concentration and persistence (plaintiff has difficulty with peers which interferes with her work performance, and her poor attendance has led to dismissal from treatment programs), 3) social interaction (plaintiff has difficulty interacting with both peers and authority figures) and 4) adaption (plaintiff has a history of difficulty staying alcohol and drug free). Tr. 146.

Dr. Stephen Klein, the Medical Director at the South Jamaica Medical Center, submitted plaintiff's medical records on January 27, 1995. Tr. 147–61. Plaintiff testified before the ALJ that she continues to see Dr. Kline whenever she gets sick. Tr. 40. The reports showed that plaintiff complained of a rash on her fingers and requested a physical on December 19, 1994. Tr. 154. An ECG performed on December 27, 1994 was normal. Plaintiff was diagnosed with fungal nails, allergies and asthma on May 9, 1994. The doctor prescribed medication for the fungus and allergies, and albuterol, amoxicellin, predisone, and proventil for her asthma. Tr. 158.

*The ALJ's Decision*

In his March 22, 1996 decision, the ALJ held that plaintiff was not disabled as defined by the Social Security Act and denied plaintiff's application for SSI disability benefits. The ALJ considered both plaintiff's exertional and nonexertional impairments, which he listed as addiction to drugs, bronchitis, and

depression. He found that the medical evidence established that "the claimant has severe impairments consisting of an affective disorder and substance abuse," but determined that "these impairments, singly or in combination, do not meet or equal the level of severity of any impairment listed in Appendix 1 to Subpart P of Social Security Regulations No. 4." Tr. 14. He determined that plaintiff retained the "residual functional capacity to perform all levels of exertional work." The ALJ further noted that plaintiff had a mental condition that imposed "certain nonexertional limitations such as a slight limitation in her ability to relate and interact with peers and supervisors." Despite this restriction, the ALJ concluded that plaintiff "remains capable of performing her past relevant work as a clerk" and that plaintiff "cannot be found disabled." Tr. 16.

Based on the February 9, 1995 report by Dr. Tam, plaintiff's treating psychiatrist, the ALJ found that the "claimant's understanding and memory, sustained concentration and persistence, social interaction and adaption were limited based on her history of difficulties interacting with peers and self-reported confusion and poor memory." Tr. 15. After stating that he gave weight to the opinion of Dr. Tam, the ALJ used the Psychiatric Review Technique Form (PRTF) required by 20 C.F.R. § 416.920a and rated plaintiff as follows: "slight" "restriction of activities of daily living," "seldom" has "difficulties in maintaining social functioning," "seldom" has "deficiencies of concentration, persistence or pace," and has had "episodes of deterioration or decompensation in work or work-like settings" only "once or twice." The ALJ did not state the basis for these findings, nor did he specify if he relied on medical reports other than that of Dr. Tam.

The ALJ rejected as "not credible to the degree alleged" plaintiff's allegations regarding her addiction to drugs, her functional limitations and restrictions, and the side effects of her disorders. Without identifying the basis for this conclusion, the ALJ concluded that plaintiff is "able to stop using drugs if she wants to," and that her reported level of daily activities, her level of medical treatment received, and her "lack of any serious side effects from medication" all indicate that her complaints are not as serious as she claims them to be.

## Discussion

Federal courts are not empowered to review the Commissioner's denial of disability benefits *de novo*. *See Fishburn v. Sullivan,* 802 F.Supp. 1018, 1023 (S.D.N.Y.1992). The scope of review involves first the determination whether the ALJ applied the correct legal standards, and second, whether the ALJ's decision is supported by substantial evidence. *See Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). A deferential standard of review is not applicable to the Commissioner's conclusions of law, and the "failure to apply the correct legal standards is grounds for reversal." *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984). Absent legal error, the Commissioner's finding that a claimant is not disabled is conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); *Filocomo v. Chater,* 944 F.Supp. 165, 168 (E.D.N.Y.1996). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation omitted). If the court finds that the Commissioner's ruling was not supported by substantial evidence, the court has authority to reverse with or without remand. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

A claimant seeking supplemental security income is considered disabled if she is unable to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. *See* 42 U.S.C. § 1382c(a)(3)(A). The Secretary has established a five-step test for considering disability claims.

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits [her] ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claim-

ant's impairment matches or is "equal" to one of the listed impairments, [s]he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps the inquiry is whether the claimant can do [her] own past work or any other work that exists in the national economy, in view of [her] age, education, and work experience.

*Sullivan v. Zebley,* 493 U.S. 521, 525–26, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). If the claimant is shown to be unable to return to her past work or undertake any other work, she is entitled to SSI benefits. *See id.* at 526, 110 S.Ct. 885.

In his decision denying disability benefits to plaintiff, the ALJ considered her drug addiction among other impairments before concluding that she retained the residual functional capacity to perform her past relevant work and therefore was not disabled.[2] On March 29, 1996, soon after the issuance of the ALJ's decision, the "Contract with America Advancement Act of 1996," Pub.L. 104–121, 110 Stat. 847 (1996), went into effect. Section 105 of the Amendment, entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics," amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). According to the amendment, the new provisions shall apply to:

> any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, supplemental security income benefits under title XVI of the Social Security Act based on disability on or after the date of the enactment of this Act, and, in the case

of any individual who has applied for, and whose claim has been finally adjudicated by the Commissioner with respect to, such benefits before such date of enactment, such amendments shall apply only with respect to such benefits for months beginning on or after January 1, 1997.

Pub.L. 104–121, 110 Stat. 847 (1996), as set forth at 42 U.S.C.A. § 1382, Historical and Statutory Notes, Effective Dates. To clarify the effective date provision, Congress amended the 1996 Act with the Technical Amendments Relating to Drug Addicts and Alcoholics, Pub.L. 105–33, 111 Stat. 251 (1997), to provide that:

> For purposes of this paragraph, an individual's claim, with respect to supplemental security income benefits under Title XVI of the Social Security Act based on disability, which has been denied in whole before the date of the enactment of this Act, may not be considered to be finally adjudicated before such date if, on or after such date—
>
> (i) there is pending a request for either administrative or judicial review with respect to such claim, or
>
> (ii) there is pending, with respect to such claim, a readjudication by the Commissioner of Social Security pursuant to relief in a class action or implementation by the Commissioner of a court remand order.

42 U.S.C.A. § 1382, Historical and Statutory Notes, Effective Dates. The ALJ issued his decision on March 22, 1996, and plaintiff subsequently appealed to this Court. As clarified by the 1997 amendment, plaintiff's claim cannot be considered to be finally adjudicated as of March 29, 1996 and plaintiff cannot be found to be disabled if her drug addiction is a contributing factor material to a finding of disability by the Commissioner.

█ Although the ALJ could not have had the statute before him when making his decision, the retroactivity of the new amendment

---

**2.** The ALJ's determination that plaintiff suffers no physical limitations in her ability to work is supported by substantial evidence. The medical records show that plaintiff's bronchitis and asthma are not severe, can be controlled by medication, and do not significantly impair plaintiff's physical capacity to work or to lead a normal life. The ALJ does not mention plaintiff's history

of a heart murmur, but the record indicates that she is not taking any medication for this condition and it does not appear to inhibit her activities in any way. Therefore, there is substantial evidence to support the ALJ's finding that plaintiff is not disabled as a result of these physical ailments.

requires a remand to the Commissioner. In his review of plaintiff's application, the ALJ did not determine the extent to which her mental impairments might exist independent of her drug addiction. Instead, the ALJ focused on plaintiff's drug use and his conclusion that she had the ability to refrain from using drugs at any time. Therefore, the ALJ did not apply the proper legal standard as dictated by the new statute. On remand, the ALJ must reevaluate plaintiff's application in light of the new amendment and make the specific determination whether plaintiff has a disability independent of her drug addiction. *See* 20 C.F.R. § 416.935(b)(1).

To be sure, it may be difficult to distinguish those impairments that are caused by plaintiff's mental condition from those that stem from her history of drug addiction. Nonetheless, especially given the new statute, the effort must be made. Plaintiff had a pre-existing mental condition before she was terminated from her job and before she began to use crack, as evidenced by her treatment for manic-depression by the psychiatrist at the Postal Service. This fact alone may not be enough to establish that plaintiff has a mental disorder that prevents her from working, but it does suggest that plaintiff suffers from a mental condition that is independent of and pre-exists her abuse of drugs.

■ It is significant that the ALJ's determination that plaintiff is not disabled was based in large part on his finding that she has the ability to refrain from using drugs. This finding is unsupported by substantial evidence. The ALJ noted only that plaintiff has "gone as long as six months" without using crack and "last used crack one month" prior to the time of the hearing. Tr. 15. These observations alone do not support his conclusion that she "is able to stop using drugs if she wants to." Tr. 15. On the contrary, the plaintiff appears to have made repeated unsuccessful efforts at drug treatment. If her inability to succeed in drug treatment is found to be caused by an independent mental condition, then is her drug addiction a "contributing factor" material to a finding of disability, or is her disability, if she is disabled, the result of the underlying

mental condition? In the first instance, the ALJ must make these determinations.

In addition, the ALJ's findings as to plaintiff's mental condition are not supported by substantial evidence. In evaluating mental impairments, the ALJ must examine the degree of functional loss in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration in work or work-like settings. *See* 20 C.F.R. § 416.920a. The ALJ considered plaintiff's impairments in all four areas, but did so in a cursory fashion and without adequate explanation for his findings. The ALJ claimed to give weight to Dr. Tam's report; yet, he found only "slight" restrictions of activities of daily living and that plaintiff "seldom" has "difficulties in maintaining social functioning" or "deficiencies of concentration, persistence or pace." Such findings could not have been based upon Dr. Tam's report, which concluded that plaintiff's mental capacity was "limited" (versus "not limited") in every given category; yet, the ALJ failed to explain how he derived his conclusions or why they differed from those of Dr. Tam. The ALJ concluded that the "medical evidence establishes that the claimant has severe impairments consisting of an affective disorder and substance abuse," and that "claimant's mental condition does impose certain nonexertional limitations such as a slight limitation in her ability to relate and interact with peers and supervisors." Yet the ALJ did not articulate why these findings translated into only "slight" or "seldom" occurring impairments in his final analysis. Remand is appropriate in instances, such as this, when the reviewing court is " 'unable to fathom the ALJ's rationale in relation to the evidence in the record" without "further findings or clearer explanation for the decision." *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996) (quoting *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982)).

■ The ALJ also failed to fully develop the record as to plaintiff's mental disorders; he focused instead on plaintiff's drug use. Dr. Tam's was the only report describing plaintiff's mental condition in any significant detail; yet the ALJ failed either to obtain further information from Dr. Tam or order a

psychiatric consultative exam. An ALJ has an affirmative obligation to develop the record. *See* 20 C.F.R. § 404.1512(d)–(f) (1997); *see also Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996). This duty is enhanced when the plaintiff is not represented by counsel, as was the case here. *See Echevarria v. Secretary of Health and Human Serv.,* 685 F.2d 751, 755 (2d Cir.1982). When the ALJ fails to develop the record fully, the claimant is denied a fair hearing. *See Lopez v. Secretary of the Dep't of Health and Human Serv.,* 728 F.2d 148, 150 (2d Cir.1984).

On remand, the Commissioner is ordered to obtain additional information from Dr. Tam and/or any other treating psychiatrists, to arrange for a consultative examination, and to reevaluate all of the evidence in light of the change in the law regarding drug use and the conclusions of this order.

### Conclusion

For the foregoing reasons, this case is remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**