Hertha COUNTERMAN, Individually and as next friend on behalf of minor child, Tammy Counterman, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.

No. 94–CV–6378L.

United States District Court, W.D. New York.

April 22, 1996.

---

1. By Public Law No. 103–296, 108 Stat. 1472    (codified at 42 U.S.C. § 901, note) the Social

Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995. Accordingly, the "Commissioner" has been substituted for the "Secretary" throughout this Decision and Order. *See* Transition Rules at 42 U.S.C. § 901, note.

Christine Valkenburgh, Southern Tier Legal Services, Bath, NY, for plaintiff.

Anne VanGraafeiland, Asst. U.S. Atty., Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff Hertha Counterman, on behalf of her minor daughter Tammy Counterman, commenced this action pursuant to 42 U.S.C. §§ 405 and 1383(c)(3), to review the final determination of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") disability benefits. Pending before me is the Commissioner's motion for judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(c). For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff applied for SSI disability benefits on behalf of her 10 year old daughter ("Tammy") in November 1992. The bases for the application were that Tammy suffered from asthma and allergies, and was learning disabled. The application was denied initially and on reconsideration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which hearing occurred on September 24, 1993. The ALJ found that Tammy was not disabled. This determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 8, 1994. This action to review the Commissioner's determination followed.

## DISCUSSION

### A. The Standard of Review

A court may reverse the factual findings of the Commissioner only if those findings are not supported by substantial evidence in the record. 42 U.S.C. §§ 405(g) and 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The determination of the Commissioner is conclusive as long as it is supported by substantial evidence and is not based on legal error. *Crawford v. Bowen*, 687 F.Supp. 99, 102 (S.D.N.Y.1988) (*citing Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir.1981)).

### B. The Standard for Finding a Disability

A person is considered to be disabled under the Social Security Act if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). In the case of a child under the age of 18, the child is deemed to be disabled if he suffers from any medically determinable physical or mental impairment of comparable severity to the impairments which would render an adult disabled. *Id.*

"Comparable severity" for a child means that the impairment so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that the impairment and the limitations resulting from it are comparable to those which would disable an adult. 20 C.F.R. § 416.924(a). For a child such as Tammy, between 3 and 16 years of age, the comparability of disability is measured primarily by whether the impairment substantially reduces the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living ... in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life." 20 C.F.R. § 416.924(a)(2); 20 C.F.R. § 416.924b(b)(3).

The Commissioner must follow a four-step evaluation process to determine whether a child has an impairment of "comparable severity" such that he or she is entitled to SSI disability benefits. *See* 20 C.F.R.

§ 416.924(b). First, it must be determined whether the child is engaging in "substantial gainful activity." *Id.* at subpart (c). If so, there can be no finding of disability. If not, then it must be determined whether or not the child has a severe impairment, or combination of impairments. *Id.* at subpart (d). If not, there is no disability. If there is an impairment, it must then be determined whether or not the impairment meets or equals certain impairments set forth in the Listing of Impairments, 20 C.F.R. § 404, subpart P, Appendix 1. *Id.* at subpart (e). If so, then the child is deemed to be disabled. If not, then the evaluation proceeds to its fourth and final step—an individualized functional assessment ("IFA"). *Id.* at subpart (f). The IFA measures "the impact of [the child's] impairment(s) on [his] overall ability to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* This analysis will determine whether the child has an impairment of comparable severity to an impairment that would disable an adult. *Id.*

Formulating an IFA for the child requires an analysis of 6 functional "domains"—the 'cognitive' function; the 'communicative' function; the 'motor' function; the 'social' function; the 'personal/behavioral' function; and the 'concentration' function (which requires an analysis of the child's concentration, persistence and pace in the completion of age-appropriate tasks). 20 C.F.R. 416.924d(h)(1)–(6). Each domain is assessed separately, and, pursuant to the Commissioner's regulations, a child between the ages of 3 and 16 is deemed to be "disabled" if he (1) is impaired to a marked degree in one domain and to a moderate degree in at least one other domain; or (2) he is impaired to a moderate degree in three of the six domains. 20 C.F.R. § 416.924e(c)(2)(i)(ii).

In this case, the ALJ determined that Tammy was not engaged in substantial gainful activity. He also found that Tammy suffered from mild attention deficit hyperactivity disorder, a learning disability, asthma and post-traumatic stress disorder.[2] Although not explicitly stated, the ALJ apparently determined that separately or together Tammy's ailments constituted a "severe impairment" because he proceeded to a determination that her ailments did not meet or equal the impairments listed on Appendix 1 of 20 CFR part 404, subpart P. Thus, he performed the fourth step of the process: the IFA. The ALJ determined that Tammy had "less than moderate" impairments in the cognitive, motor, social, personal/behavioral, and concentration domains; and no impairment in the communicative domain. Accordingly, the ALJ found that Tammy did not suffer an impairment of comparable severity to that of a disabled adult, and he denied plaintiff's application.

### C. *The Parties' Arguments and My Findings*

The Commissioner asserts that the ALJ's findings are supported by substantial evidence and must be upheld. Plaintiff disputes this and also asserts that the decision is based upon errors of law, *i.e.*, the ALJ failed to consider all the relevant evidence. Plaintiff also asserts that new and material evidence now exists to support plaintiff's application and that this matter should be remanded for further consideration.

I find the Commissioner's decision to be supported by substantial evidence. The ALJ appears to have weighed all the relevant evidence before him, some of which was inconsistent, and arrived at a reasonable, amply supported outcome. I find no error of law.

Finally, I find that the "new and material evidence" which plaintiff seeks to introduce is not relevant to Tammy's condition during the time period for which benefits were denied, and also is not probative. *See Jones v. Sullivan,* 949 F.2d 57, 60 (2d Cir.1991).

#### (i) List of Impairments

In his decision, the ALJ discussed in considerable detail the evidence concerning

---

**2.** Although the original application for SSI benefits listed only asthma, allergies and a learning disability, the plaintiff provided evidence of and the ALJ found that Tammy suffered from post-traumatic stress disorder, arising out of an incident of sexual molestation by a former family friend. The Commissioner apparently has waived any objection to considering post-traumatic stress disorder as an additional ground for SSI benefits.

Tammy's allergies and asthma, her learning disabled status, and her post-traumatic stress disorder. He concluded that "these conditions are not attended by clinical findings which meet or equal in severity those described in the Listing of Impairments in Appendix 1, Subpart P of Regulations No. 4." Decision at 3.

In her opposition to the Commissioner's motion, plaintiff asserts that the ALJ erred and that Tammy's impairment meets the requirements of Impairment 112.06—"Anxiety Disorders." 20 C.F.R. 404, App. 1, subpart P.

> In these disorders, anxiety is either the predominant disturbance or is experienced if the individual attempts to master symptoms, e.g., confronting the dreaded object or situation.... Impairment 112.06.

The criteria for finding an Anxiety Disorder (Impairment 112.06) is as follows:

> The required level of severity ... is met when the requirements in both A and B are satisfied.
>
> A. Medically documented findings of at least one of the following:
>
> 1. Excessive anxiety manifested when the child is separated ... from a parent....; or
>
> 2. Excessive and persistent avoidance of strangers; or
>
> 3. Persistent unrealistic or excessive anxiety and worry ... accompanied by motor tension, autonomic hyperactivity ...; or
>
> 4. A persistent irrational fear of a specific object, activity, or situation ...; or
>
> 5. Recurrent severe panic attacks, ...;
>
> 6. Recurrent obsession or compulsions which are a source of marked distress; or
>
> 7. Recurrent and intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress;
>
> AND
>
> B. ... for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Paragraph B2 of § 112.02 contains the following criteria:

> a. Marked impairment in age-appropriate cognitive/communicative function....; or
>
> b. Marked impairment in age-appropriate social function, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child ...) and including, if necessary, the results of appropriate standardized tests; or
>
> c. Marked impairment in personal/behavioral function, as evidenced by: (1) Marked restriction of age-appropriate activities of daily living....; or (2) Persistent serious maladaptive behaviors destructive to self, others, animals, or property ...; or
>
> d. Deficiencies of concentration, persistence, or pace....

In this case, plaintiff asserts that Tammy's impairment meets criteria number 7 of Part A of Impairment 112.06 ("recurrent and intrusive recollections ..."), and also three of the criteria of Part B of Impairment 112.02, i.e., the cognitive function (a), the personal/behavioral function (c), and the concentration function (d).

I disagree. Although the ALJ did not discuss Impairment 112.06 specifically, he identified the evidence that he considered pertinent to his analysis of all the Impairments. I find substantial evidence supporting his finding that Tammy's impairment did not meet or equal any of them, including Impairment 112.06.

### (a) Impairment 112.06, Part A

The evidence indicated that Tammy continued to have dreams about her sexual molestation, and also had some difficulty discussing her memories of it. However, it also indicated that she was responding well to her therapy and her symptoms were decreasing. Ex. 28, Dep't of Social Services Medical Report, 2/2/93. Additionally, although once in a while Tammy's thoughts "came back to her molestation" ... she stated she was not really afraid and knew she was safe. Ex. 29, Dep't of Social Services Psychologist's Report, 2/27/93. Symptoms thought to be relat-

ed to the sexual molestation incident were much reduced. *Id.*

Thus, the evidence supports a finding that Tammy did not suffer "recurrent and intrusive recollections of a traumatic experience, including dreams, which are a source of marked distress." Impairment 112.06(A)(7).

### (b) Impairment 112.06, Part B

Also, although the evidence showed that Tammy was performing only marginally in several academic areas, and had some difficulties getting along with her brother and her peers, such evidence does not constitute "marked" impairments in the cognitive or the personal/behavioral functions. *See* Section 112.02(B)(2)(a), (c). Indeed, there was some evidence to the contrary. See Ex. 30, School Report (standardized tests indicated low reading skills but overall functioning in the low-average range); Ex. 23 (functioning in the average range in listening and reading comprehension, language, and vocabulary); Ex. 29 and testimony (Tammy walks to school with friends and engages in cheerleading, basketball, and volleyball); Ex. 29 (mature socially and satisfactory relationship with peers and teachers). Moreover, although the evidence showed that after the sexual molestation, Tammy displayed some destructive behaviors (cutting her Barbies), no continuation of this or other destructive behaviors was noted. Thus, such maladaptive behavior was not "persistent." See Impairment 112.02(B)(2)(c)(2).

Finally, there was some evidence that Tammy has a short attention span, becomes easily distracted, and needs additional time to complete certain tests. However, this evidence alone is insufficient to meet the requirements for finding an Anxiety Disorder. *See* Impairment 112.06. Moreover, other evidence suggests that her attention and concentration are normal except with respect to her abuse experience, and that Tammy has no trouble being by herself and doing things requiring attention and concentration. See Ex. 29, Dep't of Social Services Psychologist Report.

In short, the evidence supports a finding that Tammy did not suffer a marked impairment in the cognitive or personal/behavioral functions. *See* Impairment 112.02(B)(2)(a) or (c). To the extent Tammy suffered to any degree deficiencies of concentration, persistence or pace (*see* Impairment 112.02(B)(2)(d)), such a finding by itself would not be enough to meet the requirements for Impairment 112.06. Thus, the requirements for finding an Anxiety Disorder under Impairment 112.06 were not presented.

I find that the ALJ's decision that Tammy's impairment(s) did not meet or equal the impairments listed in the Listing of Impairments (including Impairment 112.06) was substantially supported.

### (ii) The Individualized Functional Assessment ("IFA")

■ The ALJ found that Tammy had less than moderate impairments in the cognitive, motor, social and personal/behavioral domains and no impairment in the communicative domain. Thus, he found that Tammy did not suffer an impairment of comparable severity to that of a disabled adult as required by 20 C.F.R. § 416.924(f).

Again, plaintiff asserts that this finding was not supported by substantial evidence and that Tammy suffered "marked" impairments in three relevant domains: the cognitive domain, the personal/behavioral domain, and the concentration domain. *See* 20 C.F.R. 416.924d(h)(1), (5), & (6).

I disagree with plaintiff and find that the ALJ's decision was amply supported. As noted above, while there was some evidence in the record that Tammy's cognitive functions were generally low to average, such a level of impairment is not "marked" for purposes of finding an SSI disability. And the evidence indicating that Tammy was capable of performing at her class level (even if she required some additional assistance and even if her performance was near the bottom of the class) further supports the ALJ's finding that the impairment was "less than moderate."

Also as noted, the evidence of poor personal/behavioral skills did not rise to the level of being a "marked" impairment of her ability to take care of herself, respect others and

adapt to her environment. See 20 C.F.R. § 416.924d(h)(5). I uphold the ALJ's findings that Tammy's impairments in this domain were "less than moderate."

Finally, as noted, while there was some evidence that Tammy has a short attention span, becomes easily distracted, and needs additional time to complete certain tests, other evidence suggests that her attention and concentration are normal except with respect to her abuse experience, and that Tammy has no trouble being by herself and doing things requiring attention and concentration. See Ex. 29, Dep't of Social Services Psychologist Report. Accordingly, the evidence supports a finding that Tammy's impairment in this domain was "less than moderate." And even if this impairment were considered "moderate" as opposed to "less than moderate", that alone would be insufficient to change the outcome of the IFA. See 20 C.F.R. § 416.924e(c)(2)(i), (ii).

Thus, I find the ALJ's decision that Tammy did not suffer an impairment of comparable severity to an impairment that would disable an adult, to be substantially supported by the evidence. See 20 C.F.R. 416.924(f).

### (iii) Relevant Evidence

In her opposition to the Commissioner's motion, plaintiff asserts that the ALJ's decision is based upon errors of law because the ALJ failed to consider Tammy's parent's testimony as medical evidence, failed to consider all the medical evidence, failed to consider Tammy's mother's testimony with respect to the IFA analysis, and failed to render his decision based upon the record as a whole.

Plaintiff's allegations are broad and conclusory. She offers no specific testimony or evidence which she believes that the ALJ overlooked and should have considered.

I find these arguments entirely without merit. The ALJ's decision is well supported with numerous references to the entire record, including medical evidence and testimony. I find no meaningful gaps in the ALJ's reasoning. Thus, I find no error of law.

### (iv) New and Material Evidence

■ Finally, plaintiff asserts that this matter should be remanded so that the ALJ can consider new and material evidence. Specifically, plaintiff has attached to her complaint certain documents relative to a Family Court program known as "Persons in Need of Supervision" ("PINS"). See Family Court Act § 711, et seq. These documents indicate that on March 30, 1994, Tammy's mother sought and was granted assistance from the Family Court regarding Tammy's "incorrigibility/ungovernability." The documents indicate that the PINS Adjustment Program would run from May 1994 until the end of September 1994, during which time Tammy and her parents would apparently work together with the assistance of a case worker, toward some new behavioral goals for Tammy.

The Social Security Act provides that a court may remand a case to the Secretary to consider additional evidence, "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The Second Circuit has further refined this standard with the following guidelines. An appellant must show that the proffered evidence is (1) "new" and not merely cumulative of what is already in the record; that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative; and (3) must demonstrate good cause for the failure to present the evidence earlier. See Jones v. Sullivan, 949 F.2d 57, 60 (2d Cir.1991) (citations omitted).

I find that the evidence submitted by plaintiff fails to meet the standards set forth in Jones. First, it does not appear relevant to Tammy's condition during the time period for which benefits were denied. The initial request for PINS assistance was made on March 30, 1994, roughly six months after the hearing on plaintiff's application for SSI benefits (which was held on September 1993).

Moreover, the information is not probative. The PINS documents appear to indicate that Tammy's relationship with her parents deteriorated considerably from the time plaintiff

first applied for SSI benefits. However, these PINS documents (which contain very little information about the reasons underlying plaintiff's request) do not appear relevant to Tammy's asthma, allergies, learning disability, or even post-traumatic stress disorder. Thus, while they may indicate some area of conflict with her parents, they are not relevant to the plaintiff's 1992 application.

## CONCLUSION

For all the above reasons, the Commissioner's motion for judgment on the pleadings (# 7) is hereby GRANTED. The Commissioner's decision is affirmed and plaintiff's complaint dismissed with prejudice.

IT IS SO ORDERED.