**Maxine CLARK, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

**Docket No. 97–6164.**

United States Court of Appeals, Second Circuit.

Argued April 23, 1998.

Decided May 5, 1998.

Maxine Clark, New York City, pro se.

Susan D. Baird, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York (Gideon A. Schor, Assistant United States Attorney, on the brief), for Defendant–Appellee.

Before: WALKER and CALABRESI, Circuit Judges, and RESTANI, Judge.*

CALABRESI, Circuit Judge:

Maxine Clark appeals from a judgment of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) affirming the Social Security Administration's ("SSA") denial of her application for Supplemental Security Income ("SSI") benefits and dismissing her complaint on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). We vacate and remand.

---

* The Honorable Jane A. Restani, United States Court of International Trade, sitting by designation.

## A. Facts & Procedural History

### 1. Clark's Medical History

Clark claims that she is disabled as a result of having undergone surgery in February 1990 for a benign lesion on her right fibula, a bone in the lower leg. Although Clark testified that her suffering has been constant since the surgery, her medical records show that her complaints of pain have increased with the passage of time. Three months after the surgery, Clark told her doctor that she was not in pain and that she was able to walk; but that she had occasional swelling in her right ankle. And in February 1992, an examining physician found that Clark had recovered full motor activity and sensation in the leg, and that no follow-up treatment was necessary.

Clark next sought medical attention for her leg in June 1993, when she complained of pain to Dr. Lloyd Sookhu. Clark began seeing Dr. Sookhu on a regular basis. In July 1993, Clark applied for SSI benefits. In September 1993, Dr. Sookhu prepared a medical report indicating that Clark was experiencing pain, weakness, and decreased sensation in her right leg. He reported that there was no significant limit on her ability to flex or extend the leg, that there was no significant abnormality in her gait, and that she did not require an assistive device to walk. With respect to Clark's ability to hold a job, Dr. Sookhu indicated (a) that Clark could stand, sit or walk for a maximum of eight hours per day; (b) that she could occasionally lift and carry a maximum of twenty-five pounds; and (c) that she could push and pull hand and foot controls without limitation.

That same month, another physician, Dr. A. Kovary, also assessed Clark's residual functional capacity for work. He found (a) that Clark could lift and carry twenty pounds occasionally and ten pounds frequently; (b) that she could stand or walk about two hours in an eight-hour workday; (c) that she could sit about six hours in an eight-hour workday; and (d) that she could push and pull hand and foot controls without limitation.

Clark's treating physician, Dr. Sookhu, prepared a second assessment in July 1994. He stated that he had been seeing Clark approximately once every three months, and that she was still suffering from pain and numbness in the lower right leg. She had discontinued physical therapy, but had been taking 600 mg per day of Motrin. Dr. Sookhu's evaluation of Clark's functional capacity had changed. He indicated that she could only stand for one hour and sit for four hours out of an eight-hour workday, and that she needed to lie down during the day when tired. He reported that she could not bend her right knee without pain, but that she had no problems using her hands and could lift a maximum of twenty-one to fifty pounds and carry eleven to twenty pounds. According to Dr. Sookhu, Clark could walk for only one block without stopping, but she was able to travel alone by bus and subway. Dr. Sookhu did not provide any additional information in the space designated for "clinical findings, laboratory and test results."

### 2. Clark's Application for SSI Benefits

Clark filed her application for SSI benefits in July 1993, shortly after she began seeing Dr. Sookhu on a regular basis. The application was denied, and Clark requested a hearing before an administrative law judge ("ALJ"). In January 1995, the ALJ found that Clark was not disabled. The ALJ stated that Clark's allegations of pain and physical limitations were inconsistent with the medical evidence. The ALJ also believed that Dr. Sookhu's second functional assessment was inconsistent with, and not supported by, the other medical evidence in the record—in particular, Dr. Sookhu's and Dr. Kovary's September 1993 reports. In addition, the ALJ noted that Dr. Sookhu's second report failed to mention any clinical or objective findings to support his conclusion that Clark' functional capacity had decreased, and that Dr. Sookhu failed to explain why Clark's leg problem would preclude her from sitting for six hours a day. The ALJ concluded that Clark's impairments prevented her from lifting and carrying more than ten pounds and from standing and walking for long periods of time, but that Clark would be able to do sedentary work.

Clark filed objections, arguing that the ALJ "should have acted affirmatively to seek

out clarifying information" concerning the discrepancies between Dr. Sookhu's inconsistent functional assessments. The Appeals Council denied Clark's request for review, and she filed her complaint in the district court. In March 1997, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c), and in June 1997, the court granted this motion. The district court found that the ALJ's decision was supported by substantial evidence and that the evidence that Clark had presented to the district court was not new or material.

## B. Discussion

■ In reviewing the denial of SSI benefits, we must determine whether the SSA's decision was supported by substantial evidence and based on the proper legal standard, keeping in mind that it is up to the agency, and not this court, to weigh the conflicting evidence in the record. *See, e.g., Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir.1997). We review *de novo* the district court's decision to grant judgment on the pleadings. *See, e.g., Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996).

The law gives special evidentiary weight to the opinion of the treating physician. Specifically, the regulations state that:

Generally, we give more weight to opinions from your treating sources.... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The factors that must be considered when the treating physician's opinion is not given controlling weight include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist. *Id.* In addition, the regulations provide that the agency "will always give good reasons in [its] notice of determination or decision for the weight [it] gives [claimant's] treating source's opinion." *Id.*

The Second Circuit recently had occasion to explore the contours of the ALJ's obligations under these regulations in *Schaal v. Apfel,* 134 F.3d 496 (2d Cir.1998). In that case, we held that the lack of specific clinical findings in the treating physician's report did not, standing by itself, justify the ALJ's failure to credit the physician's opinion. We stated that

even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte. See Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996) ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel....").

*Id.* at 505 (citation altered).

■ Clark has argued that the ALJ "should have acted affirmatively to seek out clarifying information" concerning the perceived inconsistencies between Dr. Sookhu's two reports. If asked, Dr. Sookhu might have been able to provide a medical explanation for why Clark's condition deteriorated over time. Likewise, the doctor might have been able to offer clinical findings in support of his conclusion that Clark could not sit for most of the workday. Dr. Sookhu's failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case. There is, to say the least, a serious question as to whether the ALJ's duty to develop the administrative record was satisfied in this case.

■ Because the district court did not have the benefit of our opinion in *Schaal* when it evaluated Clark's claim, we vacate and remand so that the district court may reconsider Clark's claim in light of that opin-

ion.[1]  Given the complexity of the legal and factual issues in this case, we suggest that the district court might consider appointing counsel for Clark.

---

1. At oral argument, Clark asserted that a recent MRI (which was not available at the time the SSA made its decision and which was not presented to the district court) showed nerve damage, which might explain her ongoing pain.  We express no opinion as to whether this evidence should be considered by the district court, but note that in deciding whether to remand a case to the agency, the court may consider new evidence that is material, provided that the claimant demonstrates good cause for failing to present the evidence earlier.  *See, e.g., Lisa v. Secretary of Dep't of Health & Human Servs.*, 940 F.2d 40, 42–43 (2d Cir.1991).  Material evidence is evidence that is "relevant to the claimant's condition during the time period for which benefits were denied."  *Id.* at 43.  We have held that the results of medical tests completed after the SSA concluded its review were material where those test results allowed the treating physician "for

the first time [to] diagnose[ ] a neurological cause of [the claimant's] serious condition."  *Tolany v. Heckler*, 756 F.2d 268, 272 (2d Cir.1985).  In other words, the new test results were found to be material because they not only shed light on the claimant's current health, but also provided an explanation for her health problems in the time period for which benefits were denied.  *See generally Missouri, Kan., & Tex. Ry. v. Williams*, 103 Tex. 228, 125 S.W. 881, 882–83 (1910) (providing a classic statement of the evidentiary principle that "[w]hen the question is as to a condition existing at one time, evidence as to that at a different time" may or may not be probative, depending upon whether the condition is "ephemeral" or "permanent or lasting").

