Robert SWEENEY, Plaintiff,

v.

Jo Anne BARNHART, Commissioner
of Social Security, Defendant.

No. 05–cv–3609 (ADS)(ETB).

United States District Court,
E.D. New York.

Jan. 18, 2007.

Robert Sweeney, Roosevelt, NY, Plaintiff pro se.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, by John M. Kelly, Assistant U.S. Attorney, Brooklyn, NY, for Defendant.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

Robert Sweeney ("Sweeney" or the "Claimant") commenced this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final determination of the Commissioner of Social Security (the "Commissioner") that denied disability benefits to him. Currently before the Court are motions by both parties pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

### I.  *BACKGROUND*

#### A.  *Procedural History*

On March 1, 1999, Sweeney filed an application for social security disability benefits and supplemental security income alleging a disability and his inability to work due to depression. After his application was denied, he requested reconsideration. Upon reconsideration, the application was again denied. The Claimant requested a hearing before an administrative law judge ("ALJ"). On November 1, 1999, a hearing was held before an ALJ. The Claimant was represented by counsel. After the hearing, in a decision dated November 15, 1999, the ALJ denied Sweeney's claim for disability benefits finding that the Claimant was not disabled. On September 22, 2000, the Appeals Council denied the Claimant's request for review. Thereafter, the Claimant commenced an action in this Court, and on October 5, 2001, this Court remanded the case for further administrative proceedings.

On March 27, 2000, the Claimant filed an additional application for disability benefits and supplemental security income, alleging that he suffered from depression, dizzy spells and insomnia. The Claimant's application was denied and on June 5, 2001, the Claimant appeared at a hearing before a different ALJ. The ALJ denied Sweeney's claims and on September 6, 2002, the Appeals Council remanded the matter for further proceedings. However, in October 2001, the Claimant filed a third application for benefits. This claim was initially denied and the Claimant requested a hearing.

Thereafter, the Claimant's applications were consolidated. On January 12, 2004, the Claimant appeared at a hearing to address his three pending applications before ALJ Terence Farrell. The Claimant was represented by counsel. On March 24, 2004, addressing the Claimant's consolidated applications, the ALJ determined that the Claimant was not disabled. On April 28, 2005, the Appeals Council denied

the Claimant's request for review. On July 1, 2005, the Claimant commenced this action, seeking review of the April 28, 2005 final decision of the Commissioner.

### B. *The Record*

#### 1. The Plaintiff's Background and Testimony

##### a. The November 1, 1999 Hearing

Sweeney was born in 1958 and is now 48 years of age. He completed high school and worked as a laborer in an animal shelter, maintaining kennels, for 13 years. His job at the animal shelter required him to stand, walk and carry between ten and twenty pounds. The Claimant testified that he was terminated from his employment at the animal shelter in January 1999, because he missed work. He testified that he had the flu and had been drinking.

Sweeney further testified that he had an alcohol and substance abuse problem and had started drinking and using cocaine when he was in his twenties. He had been hospitalized for his substance abuse problems in 1989 and was thereafter "clean" for three years. Following a relapse in 1994, he underwent detoxification and rehabilitation. He was arrested in 1997 for driving while intoxicated and placed on five years' probation. He also lost his driver's license. Following his termination from his employment at the animal shelter, he entered a detoxification program.

Sweeney testified that he began feeling depressed following his termination and began seeing a psychiatrist and he was taking Paxil to control his drug use. He testified that Paxil made him feel drowsy and confused. He also said that he sees his doctor monthly and attends Alcoholics Anonymous meetings. The Claimant further testified that he does not want to work because he is "going through a lot of stuff" and "can't afford anything." He stated that because the medication makes him drowsy he would not be able to properly perform work while being so medicated.

In addition, on a form the Claimant filled out prior to his hearing, he informed the Commissioner that, despite his depression, he shops, buys clothing, cooks, cleans, reads, goes to the library, watches television and visits friends, family and sponsors.

##### b. The June 5, 2001 Hearing

During the June 5, 2001 hearing, the Claimant testified that he met with his psychiatrist once each month and attended a support group for depression every week. He claimed to be free of drugs for the prior two years. He testified that he had been terminated from his employment.

Sweeney also testified that he collects money from welfare, but also has a maid who cleans and makes his bed. He further testified that he pleaded guilty to driving while intoxicated three times, with the last time in 1997. At the time of the hearing, he was on probation.

##### c. The January 12, 2004 Hearing

The January 12, 2004 hearing was held at Bare Hill Correctional facility where the Claimant was incarcerated for attempted robbery. He testified that he took a bus driving class, but his license was taken away. He further testified that prior to working at the animal shelter, he worked as a truck driver. He received unemployment insurance benefits for 6 months following his termination and then he received public assistance. Also, he testified that he was not attending any therapy and only received renewals of his Remeron medication.

The Claimant stated that he was depressed, tired, had difficulty concentrating and was dizzy. He testified that he was fired because he had been drinking and could not get up to attend work. He stated that he was in the process of contacting places to assist him in finding employment after his release from prison. He claimed that he had difficulty attending work on a regular basis and was tired. He testified that he was taking a food preparation class in prison and had worked in the infirmary at the prison where he had previously been incarcerated.

### 2. The Treating Physicians

### a. Nassau County Medical Center

Although Sweeney alleges that his impairment began on January 22, 1999, following his termination from employment at the animal shelter, he was treated at the Nassau County Medical Center for a substance abuse problem on various occasions. According to his medical records, in 1987, he reported that he was an alcoholic and had two previous arrests for driving while intoxicated. He stated that he was anxious regarding a possible jail sentence and depressed. On December 11, 1987, the Claimant was diagnosed with alcohol dependence and an adjustment disorder.

In July 1989, the Claimant had a psychiatric evaluation at the Nassau County Medical Center. He reported feeling depressed and the physicians concluded that he had mild mood swings, alcohol dependency, antisocial traits and they would rule out depressive disorder. In March 1993, the Claimant was again treated at the Nassau County Medical Center, this time for angry aggressive behavior. He was diagnosed with alcohol dependence and a personality disorder.

In September 1997, Sweeney was again treated at the Nassau County Medical Center for substance abuse. At that time, the Claimant complained of depression and stated that he attributed his depression to alcoholism. He underwent detoxification in September 1997.

Although the Claimant does not allege that he has any physical limitations, the Court notes that the Claimant was treated at the Nassau County Medical Center for multiple stab wounds in December 1999. The Claimant's medical records note that he had an elevated blood alcohol level and symptoms of intoxication when treated for the stab wounds.

### b. South Oaks Hospital

The Claimant underwent detoxification at the Island Medical Center, following the termination from his employment at the animal shelter. In February 1999, he underwent rehabilitation for substance abuse at South Oaks Hospital where he was initially evaluated by Dr. Vladimir Glauberson. Dr. Glauberson's primary diagnosis was alcohol and cocaine dependence and rule out mood disorder due to his cocaine dependence. He provided a secondary provisional diagnosis of personality disorder. Dr. Glauberson further noted that Sweeney was angry and tearful and stated that he was in job jeopardy; had several detoxifications; had been arrested multiple times for driving while intoxicated; and that his longest sober period was from 1990–1992.

Dr. Sivachandra Vallury treated the Claimant at South Oaks Hospital and made a diagnosis of alcohol and cocaine dependence. Dr. Vallury noted that the Claimant would be discharged to attend outpatient treatment and self help groups.

### c. Dr. Irfan Saeed

In 1999, Dr. Irfan Saeed, the Claimant's treating psychiatrist, diagnosed the Claimant with alcohol dependence, depression

and antisocial traits. Dr. Saeed determined that the Claimant required a less stressful work environment and that his depression would resolve within 6 months following remission from alcohol abuse. Dr. Saeed determined that the Claimant's symptoms would not continue if his substance abuse ceased.

On April 25, 2000, Dr. Saeed completed an additional medical report regarding the Claimant. Dr. Saeed determined that the Claimant was depressed and had alcohol dependence. The Claimant reported to Dr. Saeed that he felt stressed. Dr. Saeed noted that the Claimant was cooperative and had no thought disorder. Dr. Saeed found that the Claimant's attention and concentration were adequate. Dr. Saeed noted that the Claimant had no limitation in understanding, memory, concentration, adaption or social interaction. Dr. Saeed reported that, according to the Claimant, he had a limited ability to work, but took care of himself, cooked and used public transportation.

#### d. Dr. Raj A. Danthuluri

On November 14, 2000, Dr. Raj A. Danthuluri prepared a report regarding the Claimant. Dr. Danthuluri treated the Claimant on five occasions from November 2000 through May 2001. The Claimant informed Dr. Danthuluri that he felt depressed "on and off." Dr. Danthuluri diagnosed the Claimant with a depressive disorder, history of alcohol dependence and antisocial personality disorder. Dr. Danthuluri noted that the Claimant could not function outside the home, had difficulty concentrating, decreased weight, difficulty sleeping and loss of interest in almost all activities. At the time of that visit, Dr. Danthuluri checked a box on the form noting that the Claimant had marked restrictions in several areas of activity, including social functioning and concentration.

On January 19, 2001, the Claimant was again treated by Dr. Danthuluri. He informed Dr. Danthuluri that he was working 12 hours each week but could not work more hours because his medication made him tired. He again saw Dr. Danthuluri on March 19, 2001, and reported that he was doing fine but was not working because he attended group therapy sessions and Alcoholics Anonymous meetings. During the six month period when he treated Sweeney, Dr. Danthuluri noted that the Claimant denied suicidal tendencies; reported on and off depression; and was unmotivated to start a job. Dr. Danthuluri also noted that Sweeney had informed him that he knew how to deal with his depressive state.

In response to a subpoena from the Social Security Administration requesting additional information and clarification, Dr. Danthuluri responded that he had only treated Sweeney for a limited period of time during his residency training.

#### e. Dr. Khalid I. Chaundry

In 2001, Dr. Khalid I. Chaundry assessed the Claimant, noting that the Claimant had been treated monthly since April 1, 1999. Dr. Chaundry noted that the Claimant had been diagnosed with depressive disorder and alcohol dependence. He found that Sweeney was depressed on and off, but was cooperative, his insight and judgment were fair, and his orientation and memory were intact. He further found that Sweeney was limited in his ability to concentrate, but had no limit to his understanding. However, he found that Sweeney was limited in his ability to work as a result of depression. Dr. Chaundry stated that he was unable to give an opinion as to Sweeney's ability to do work related activities.

Dr. Chaundry also evaluated the Claimant through group therapy sessions from July 2001 through January 2002. During those sessions, Dr. Chaundry reported that the Claimant's mood was fine and that the Claimant had no complaints.

### 3. Social Security Administration Physicians

#### a. Dr. Albert Crum

On April 30, 1999, at the request of the Social Security Administration, Dr. Albert Crum examined Sweeney. Dr. Crum reported that the Claimant complained that he has a history of alcoholism and was on probation for driving while intoxicated. After examination, Dr. Crum noted that the Claimant was coherent and cooperative. He further found that the Claimant was slightly depressed, but informed Dr. Crum that each day he has breakfast, takes walks, eats lunch and dinner and watches television. Dr. Crum diagnosed the Claimant with substance abuse and alcoholism and determined that the Claimant could not hold a job until his substance abuse was stabilized.

#### b. Dr. S. Hou

On May 11, 1999, Dr. S. Hou a state agency medical consultant, reviewed the Claimant's records and completed a Psychiatric Review Technique form. Dr. Hou determined that the Claimant had a substance addiction disorder, but not a severe impairment. Dr. Hou noted that the Claimant's cognition was intact and that he shopped, cooked, traveled and socialized. Dr. Hou found that the Claimant had slight restrictions in daily activities and social functioning, but did not have deficiencies in concentration or pace.

### 4. Mental Residual Functional Capacity Assessments

On May 3, 2000, a Social Security Administration review physician, Dr. Curly, completed a mental residual functional capacity assessment of the Claimant based on a review of his medical records. The physician concluded that the Claimant was not significantly limited in understanding and memory. He noted that Sweeney was moderately limited in his ability to perform activities within a schedule and maintain regular attendance. However, Dr. Curly found that the Claimant was not limited in any other area of sustained concentration and persistence and could complete a normal workday and make work related decisions. The physician further determined that the Claimant was not significantly limited in any area of social interaction. In addressing the Claimant's adaptation, Dr. Curly determined that Sweeney was moderately limited in his ability to respond appropriately to changes in the work setting. However, Dr. Curly determined that the Claimant was able to set realistic goals, travel on public transportation and was aware of normal hazards.

Dr. Curly further determined that the Claimant was able to understand and carry out work-like procedures, get along with co-workers and complete tasks in a timely manner. Dr. Curly also determined that Sweeney could adapt to the routines of a work setting as long as he stopped abusing drugs. Two additional Social Security Administration review physicians, Dr. McDermott and Dr. Lefer, reviewed and concurred with Dr. Curly's assessment.

In January 2001, Dr. Curly again assessed the Claimant. His findings were identical to the opinions contained in his May 2000 assessment. In addition, Dr. Curly determined that the Claimant could adapt to the demands of a normal work setting. He also determined that Sweeney's problems were all related to his substance abuse. He further noted that the Claimant had mild restrictions in his daily

activities, in maintaining social functioning and in concentration and pace.

### 5. Physical Residual Capacity Test

As a result of the Claimant's 1999 stab wounds, the Social Security Administration requested that a physical residual capacity assessment be performed. A Social Security Administration physician determined that, based upon the Claimant's physical injuries, he could carry 50 pounds on an occasional basis, 25 pounds on a regular basis and stand or walk for 6 hours each day.

### 6. Testimony of the Medical Expert

At the January 12, 2004 hearing, Dr. Michael Friedman testified on behalf of the Social Security Administration as a medical expert regarding the Claimant's impairments and ability to work. He reviewed the evidence contained in the record and testified that the Claimant's main diagnostic problem was substance abuse. Dr. Friedman found that the Claimant's problems, such as losing his job, were a result of his substance abuse. Dr. Friedman found that although the Claimant suffers from depression, his depression is reactive to his life circumstances also as a result of his substance abuse. Dr. Friedman determined that the Claimant could perform simple work and noted that the Claimant's hearing testimony indicated no substantial cognitive limitations. Dr. Friedman noted that although the Claimant has mild social limitations, that he himself has indicated that he shops, cooks, cleans, reads, socializes with family and watches television.

### C. *The ALJ's March 25, 2004 Findings*

In the March 25, 2004, decision, the ALJ denied Sweeney's disability claim. Based on the evidence presented, the ALJ opined that the Claimant was not disabled within the meaning of the Social Security Act. The ALJ determined that the Claimant has severe impairments, multiple stab wounds, depressive disorder and suffers from alcohol and drug abuse. The ALJ first found, however, that the Claimant's impairments were not severe enough to meet or equal the impairments listed in the regulations.

The ALJ reviewed and credited the opinions of the Claimant's treating physicians at South Oaks Hospital, Dr. Glauberson and Dr. Vallury. The ALJ determined that they diagnosed the Claimant with alcohol and cocaine dependence. The ALJ also credited the opinion of the Claimant's treating physician, Dr. Saeed. The ALJ found that Dr. Saeed diagnosed the Claimant with depression and alcohol dependence, but found that the Claimant had articulate speech, and good concentration and memory. The ALJ further reviewed and discussed the opinions of Dr. Danthuluri, noting that the Claimant had told Dr. Danthuluri that he could not work because he needed to go to his doctor appointments and Alcoholics Anonymous meetings.

The ALJ noted that the Claimant's counsel argued that his depressive disorder was severe enough to meet a listed impairment because Dr. Danthuluri found that the Claimant had marked restrictions in certain areas of daily living. Although the ALJ noted that Dr. Danthuluri checked a box on a form noting that the Claimant had marked restrictions in certain areas of functioning, the ALJ determined that Dr. Danthuluri's opinion on that form did not lead to the conclusion that the Claimant had a depressive disorder at the listing level of the regulations. The ALJ noted that the term "marked" appearing on the form is not defined, and therefore, the ALJ could not determine the severity of the statement. The ALJ further noted that Dr. Danthuluri treated

the Claimant for a short time and that it was unclear whether the restrictions noted by Dr. Danthuluri related solely to the Claimant's depression or additionally to his substance abuse.

The ALJ then discussed whether the Claimant retained the residual functional capacity to perform the requirements of his past relevant work or other work in the national economy. The ALJ reviewed and credited the opinion of the Claimant's treating physician, Dr. Chaundry. The ALJ noted that Dr. Chaundry diagnosed Sweeney with depressive disorder and alcohol dependence. The ALJ noted that the Claimant informed Dr. Chaundry that he felt depressed "off and on." The ALJ reviewed Dr. Chaundry's findings that the Claimant had limitations in concentration, but no limitations in memory or understanding. The ALJ further noted that Dr. Chaundry stated that he was unable to provide an opinion about Sweeney's ability to do work related activities.

The ALJ also reviewed the testimony of Dr. Crum who had examined the Claimant for the Social Security Administration. The ALJ noted that Dr. Crum diagnosed the Claimant with drug and alcohol dependence and stated that the Claimant could not maintain a job until he was stabilized.

The ALJ also reviewed the Claimant's testimony and found that the Claimant minimized his substance abuse and that his statements were, at times, inconsistent with his medical records. The ALJ found that the Claimant had lost his job and driver's license as a result of his substance abuse. The ALJ further determined that, throughout the Claimant's medical records, he admitted to significant drug and alcohol abuse. The ALJ specifically noted that, in his records from Nassau County Medical Center, the Claimant attributed his depression to his substance abuse. The ALJ further noted that the Claimant's treating physician, Dr. Vallury, noted the Claimant's drug and alcohol dependence and resultant job jeopardy.

The ALJ determined that, considering both the Claimant's depressive disorder and substance abuse, the Claimant was mildly limited in his daily activities, moderately limited in social functioning and had difficulty with concentration and persistence. The ALJ further determined that the Claimant could occasionally carry 50 pounds, regularly carry 25 pounds and stand or walk for 6 hours each day. However, the ALJ found that the Claimant could not interact appropriately with others, be reliable in attendance or maintain attention and concentration. The ALJ determined that as a result of his mental impairments, the Claimant was unable to make a successful adjustment to work that exists in the national economy. As a result, the ALJ determined that the Claimant is disabled within the framework of the medical vocational guidelines.

However, the ALJ further determined that, pursuant to Public Law 104–121, an individual is not disabled if alcoholism or drug addiction is a contributing factor material to the disability determination. Crediting the opinions of the Claimant's treating physicians, the ALJ noted that Dr. Saeed diagnosed Sweeney with alcohol dependence and depression, finding that he should be employed in a less stressful situation because of remission from alcohol abuse. The ALJ also relied upon Dr. Glauberson's diagnosis of Sweeney as alcohol and cocaine dependent with a mood disorder as a result of his cocaine use. The ALJ further noted that Dr. Friedman and Dr. Crum opined that Sweeney's main problem was substance abuse.

Therefore, the ALJ concluded that substance abuse was a contributing factor material to the determination of Sweeney's disability. Thus, the ALJ determined that

"absent consideration of the effects of ongoing alcohol abuse," the Claimant retains the ability to perform his past relevant work.

## II. DISCUSSION

### A. Standard of Review

When reviewing the decision of the Commissioner, the court may set aside a determination only if the decision was based on legal error or was not supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g); *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir.2003); *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999); *Brown v. Apfel,* 174 F.3d 59, 61–62 (2d Cir.1999). Substantial evidence has been described as "more than a mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The evidence must be such that a reasonable person accept it as adequate to support the conclusion. *Brown,* 174 F.3d at 62–63.

In addition, the Commissioner must accord special evidentiary weight to the opinion of treating physicians, so long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is consistent "with the other substantial evidence in [the] case record." *See Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). When the Commissioner chooses not to give the treating physician's opinion controlling weight, he must give "good reasons in his notice of determination or decision for the weight he gives the claimant's treating source's opinion." *Id.*

When determining whether the Commissioner's findings are supported by substantial evidence, the court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983). Further, the court must keep in mind that "it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark,* 143 F.3d at 118. Therefore, when evaluating the evidence, "the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review." *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984)).

In addition, the district court may remand a disability claim for the taking of additional evidence upon a showing that there is new material evidence and that such evidence should be presented to the ALJ in order to render a valid decision. *Id.* Also, the court may remand if "there are gaps in the administrative record or the ALJ has applied an improper legal standard...." *Rosa v. Callahan,* 168 F.3d 72, 82–83 (2d Cir.1999).

A reviewing court may "enter upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decisions of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When deciding whether to remand, an important factor that the court considers is whether further findings would plainly help to assure the proper disposition of the claim. *Rosa,* 168 F.3d at 83.

### B. Analytical Framework

To qualify for disability benefits under 42 U.S.C. § 423(d)(1)(A) a plaintiff must establish his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or

can be expected to last for a continuous period of not less than twelve months." *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir.2004). The Act also states that the impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.*

Federal regulations set forth a five step analysis that the ALJ must follow when evaluating disability claims:

1) The ALJ will consider whether the claimant is engaged in substantial gainful activity.

2) The ALJ will consider whether the claimant has a severe medically determinable physical or medical impairment which will impair the claimant from doing basic work activities

3) The ALJ will consider whether the claimant's severe medical impairment, based solely on medical evidence, is a limitation that is listed in Appendix 1 of the regulations.

4) The ALJ will consider an assessment of the claimant's residual functional capacity and ability to continue past relevant work despite severe impairment.

5) The ALJ will consider an assessment of the claimant's residual functional capacity along with age, education, and work experience. Here the burden shifts to the ALJ to show that the claimant can perform alternative work.

20 C.F.R. §§ 404.1520, 416.920.

When proceeding through this five step analysis, the Commissioner must consider the objective medical facts, the diagnoses or medical opinions based on these facts, the subjective evidence of pain and disability, and the claimant's educational background, age and work experience. *Mongeur v. Heckler,* 722 F.2d at 1037.

### C. *Analysis*

Based upon the medical and non-medical evidence, the ALJ determined that the Claimant was limited by his depression and alcohol and drug abuse, could not return to his past relevant work and was, therefore, disabled. However, the ALJ determined that the Claimant's substance abuse was a contributing factor to his disability and that he would not be disabled without drug and alcohol abuse. The ALJ determined that, without drugs and alcohol, the Claimant was capable of performing his past relevant work. As a result, the ALJ found that the Claimant was not disabled. 42 U.S.C. § 423(d)(2)(C) and 1382(a)(3)(*l*) (2006).

Although the Claimant, now pro se, filed a motion for judgment on the pleadings, the Claimant only states that he is appealing the determination of the Commissioner. He makes no arguments in support of his motion and submits no papers in opposition to the Commissioner's motion. Sweeney's complaint and motion papers provide no grounds for his appeal of the Commissioner's decision. As such, Sweeney's complaint and motion are "overly conclusory, and without more, insufficient to defeat the Commissioner's motion for judgment on the pleadings." *Alvarez v. Barnhardt,* No. 02 Civ. 3121, 2002 WL 31663570, 2002 U.S. Dist. LEXIS 22667 (S.D.N.Y. Nov. 26, 2002) (citing *Counterman v. Chater,* 923 F.Supp. 408, 414 (W.D.N.Y.1996) (Court rejects plaintiff's allegations that the ALJ "failed to consider [minor claimant's] parent's testimony as medical evidence, failed to consider all the medical evidence, failed to consider [child's] mother's testimony with respect to the IFA analysis, and failed to render his decision based upon the record as a whole," on the ground that they are "broad and conclusory. She offers no specific tes-

timony or evidence which she believes that the ALJ overlooked and should have considered.")). In any event, because the Claimant is now proceeding pro se, and to complete the record, this Court will review the Commissioner's decision.

### 1. The Treating Physician Rule

■ The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record. *See Clark v. Commissioner of Soc. Sec.*, 143 F.3d at 119. The "treating physician rule," as it is known, "mandates that the medical opinion of the claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000); *see also Rosa*, 168 F.3d at 79; *Clark*, 143 F.3d at 119.

■ If the opinion of the treating physician as to the nature and severity of the impairment is not "well-supported" by objective evidence, the obligation to give controlling weight to a treating physician's opinion is inapplicable. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). When controlling weight is not given to a treating physician's medical opinion, the ALJ must consider various "factors" to determine how much weight to give the opinion, such as: (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical and laboratory findings; (4) the physician's consistency with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004). Furthermore, the ALJ must provide "good reasons" for not crediting the opinion of a plaintiff's treating physician. *See* 20 C.F.R. § 416.927(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998)).

■ Here, the ALJ properly reviewed and relied upon the findings of the Claimant's various treating physicians. Specifically, the ALJ discussed and relied upon Dr. Glauberson's and Dr. Vallury's treatment of the Claimant and their diagnoses of alcohol and cocaine dependence, as well as Dr. Glauberson's diagnosis of rule out mood disorder due to cocaine abuse. The ALJ further credited the opinion of the Claimant's treating physician, Dr. Saeed, and relied upon Dr. Saeed's findings that Sweeney felt sad and stressed out. The ALJ relied upon Dr. Saeed's diagnosis of alcohol dependence and depression. The ALJ also gave weight to the opinion of Dr. Chaundry, another of the Claimant's treating physicians. The ALJ relied upon Dr. Chaundry's diagnosis that the Claimant suffered from depression and a history of alcohol dependence.

■ However, the ALJ did not give great weight to one opinion of Dr. Danthuluri, the Claimant's additional treating physician. Although Dr. Danthuluri opined that Sweeney had marked restrictions in daily functioning, the ALJ reasonably determined that "marked" was not defined and that he could not properly rely upon that assessment without an understanding of the intended severity of that analysis. Indeed, Dr. Danthuluri noted that Sweeney was depressed, on and off, and expressed his preference to be on disability rather than work. Further, Dr. Danthuluri's notation of marked restrictions was on a preprinted form and consisted only of a box that had been checked. The ALJ noted that he could not tell

whether that opinion encompassed Sweeney's depressive disorder or also relied upon his drug dependence. The ALJ further noted that Dr. Danthuluri only treated the Claimant for 6 months and only met with him on five occasions.

■ Moreover, the ALJ noted, during the hearing, that he had attempted to contact Dr. Danthuluri for further clarification of his opinion but was informed by Dr. Danthuluri that he had no records and had only treated Sweeney for a limited time during his residency.

Under the regulations, the ALJ has an affirmative obligation to develop the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996); *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir.1982). The regulations describe this duty by stating that, "[b]efore we make a determination that you are not disabled, we will develop your complete medical history ... [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d). The Court finds that the ALJ satisfied his duty of developing the record in this case. The ALJ properly requested relevant medical records and ordered a consultative exam when it was apparent that the available records in the case were sparse. *See* 20 C.F.R. § 404.1512(f)

The ALJ reasonably found that he could not completely rely upon Dr. Danthuluri's opinion. The ALJ further discussed and relied upon the diagnoses and opinions of the Plaintiff's various other treating physicians and properly considered the short length of Dr. Danthuluri's relationship with Sweeney, the frequency of his examinations of Sweeney, and his consistency with the record as a whole.

In sum, substantial evidence supported the ALJ's decision not to give great weight to one aspect of Dr. Danthuluri's opinion.

### 2. Substantial Evidence Supports the ALJ's Decision

The ALJ found that the Claimant had not engaged in any substantial gainful activity since the alleged onset of his disability, and that he had an impairment or combination of impairments considered to be "severe" under the Commissioner's regulations, although not severe enough to meet a listing. The ALJ further determined that the Claimant was disabled because, pursuant to the evidence, he could not reliably attend work and interact appropriately with others. However, the ALJ determined that "[a]bsent alcohol and drug abuse and dependency, the Administrative Law Judge finds that the claimant has no severe mental impairment.. alcohol abuse and dependency is a contributing factor material to the determination of disability."

"The law bars a finding of disability if drug addiction or alcoholism is a 'contributing factor material to' the determination of disability." *Winegard v. Barnhart*, No. 02–CV–6231, 2006 WL 1455479, **9–11, 2006 U.S. Dist. LEXIS 31973, at *29–32 (W.D.N.Y. Apr. 5, 2006) (citing 42 U.S.C. § 423(d)(2)(C) and 1382a(3)(*l*) (2006)); *see also Williams v. Callahan*, 30 F.Supp.2d 588, 593 (E.D.N.Y.1998) ("On March 29, 1996 ... Pub.L. 104–121, 110 Stat. 847 (1996), went into effect. Section 105 of the Amendment, entitled 'Denial of Disability Benefits to Drug Addicts and Alcoholics' ... provide[s] that an individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled").

In determining whether the Claimant's drug and alcohol abuse were material factors, the ALJ properly applied the Commissioner's rule codified at 20 C.F.R. § 416.935. Pursuant to § 416.935

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism. (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol. (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 416.935 (1995).

In the present case, as previously discussed, the ALJ thoroughly reviewed and relied upon the Claimant's treating physicians. Specifically, medical assessments from the Plaintiff's various treating physicians reveal diagnoses of alcohol and cocaine abuse and dependence. The Claimant was treated at the Nassau County Medical Center for substance abuse problems on various occasions. The Claimant was evaluated by Dr. Vallury and Dr. Glauberson and diagnosed with alcohol and cocaine dependence as well as a personality disorder resulting from cocaine abuse. Dr. Saeed, another of the Claimant's treating psychiatrists, diagnosed the Claimant with alcohol dependence, depression and antisocial traits. Notably, Dr. Saeed determined that the Claimant's symptoms would not continue if his substance abuse ceased. Moreover, the Claimant's additional treating physicians, Dr. Chaundry and Dr. Danthuluri, diagnosed the Claimant with depression and alcohol dependence. These medical opinions, in addition to the Claimant's own testimony and records demonstrating his ability to carry out daily activities, support the ALJ's conclusion that substance abuse was a contributing factor material to Sweeney's disability determination.

The substantial evidence supports the ALJ's finding that, absent alcohol and drug abuse, the Claimant would not be limited in his ability to attend work reliably; would not have difficulty concentrating; and would only be mildly limited in his ability to interact with others. Further, the ALJ determined that the Claimant was not entirely credible regarding his alcohol and drug abuse, finding that the Claimant minimized the effects of his alcohol and drug abuse in contradiction to the information contained in his medical records and the admissions he made to his treating physicians. The ALJ noted that the Claimant admitted to his treating physicians that he had lost his driver's license and his job due to his substance abuse problems. In fact, significantly, in his

medical records, the Claimant himself attributed his depression to his substance abuse.

In addition, the physicians who evaluated the Claimant pursuant to the Commissioner's request, all diagnosed the Claimant with substance abuse problems and dependence.

A Commissioner is not obligated to accept the Claimant's testimony about his complaints and restrictions without question, but instead has the discretion to evaluate the claimant's credibility in light of the evidence in the record. *See Kendall v. Apfel,* 15 F.Supp 2d 262, 267 (E.D.N.Y. 1998); *Rosado v. Shalala,* 868 F. Supp 471, 473 (E.D.N.Y.1994). The ALJ accorded weight to the reports of all of the Claimant's treating physicians, which stated that during the period of time in which the Claimant is seeking to receive disability benefits, he was suffering from drug and alcohol dependence. It was within the discretion of the ALJ to attribute weight to each such source.

The ALJ reasonably and in reliance upon appropriate factors, determined that absent consideration of the effects of the Claimant's substance abuse, the Claimant was capable of returning to his former employment. Accordingly, the Court finds that the findings, determinations, and conclusion of the ALJ at the hearing were clearly supported by substantial evidence in the record.

### III. CONCLUSION

Having reviewed the submissions of the parties and the findings by the Commissioner, the ALJ, and the Appeals Council, and for the reasons set forth above, it is hereby

**ORDERED,** that the motion by the Commissioner for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **GRANTED;** and it is further

**ORDERED,** that the motion by the Claimant for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, is **DENIED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to mark this case closed.

**SO ORDERED.**