Lenora RICE, on behalf
of T.C.K., Plaintiff,

v.

Michael J. ASTRUE, Commissioner
of Social Security, Defendant.

No. 09–CV–915 (VEB).

United States District Court,
N.D. New York.

Signed Jan. 6, 2012.

Karen S. Southwick, Olinsky Law Group, Syracuse, NY, for Plaintiff.

Andreea L. Lechleitner, Social Security Administration, New York, NY, for Defendant.

## DECISION AND ORDER

VICTOR E. BIANCHINI, United States Magistrate Judge.

### I. INTRODUCTION

In January of 2005, Plaintiff Lenora Rice filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her grandson, T.C.K. ("Claimant"),[1] alleging disability due to various impairments, including Attention Deficit Hyperactivity Disorder ("ADHD") and asthma. The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Olinsky Law Group, Jaya A. Shurtliff, Esq. and Karen S. Southwick, of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16). On November 30, 2011, the parties, by and through their respective counsel of record, consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket No. 20).

### II. BACKGROUND

The procedural history may be summarized as follows:

1. T.C.K. is a minor child. Thus, in accordance with Rule 5.2(a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

Plaintiff is the grandmother and guardian of Claimant, a minor child. On January 21, 2005, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning at birth. (T at 50–52).[2] The application was denied initially. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). On April 14, 2009, a hearing was held in Syracuse, New York before ALJ Patrick Flanagan. (T at 287–334). Plaintiff and Claimant appeared at the hearing without an attorney and testified. (T at 295–334).

On April 29, 2009, ALJ Flanagan issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act. (T at 16–23). The ALJ's decision became the Commissioner's final decision on June 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 4–6).

On August 10, 2009, Plaintiff, acting on Claimant's behalf and with counsel, timely commenced this action by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on January 7, 2010. (Docket No. 12). Plaintiff filed a supporting Brief on February 22, 2010. (Docket No. 13). The Commissioner filed a Brief in opposition on April 6, 2010. (Docket No. 15).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons set forth below, the Commissioner's motion is denied, Plain-tiff's motion is granted, and this case is remanded for the calculation of benefits.

## III. DISCUSSION

### A. Legal Standard

██ A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979).

██ "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982).

██ "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court consid-

---

**2.** Citations to "T" refer to the Administrative Transcript. (Docket No. 11).

ers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the ˙evidence may differ from the [Commissioner's]." *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or. which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen]˙ who engages in substantial gainful activity. . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart,* 245 F.Supp.2d 479, 487–88 (E.D.N.Y.2003); *Ramos v. Barnhart,* 02 Civ. 3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles,* 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles,* 245 F.Supp.2d at 488; *Ramos,* 2003 WL 21032012, at *7.

If the existence of a severe impairment˙ is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles,* 245 F.Supp.2d at 488; *Ramos,* 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos,* 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos,* 2003 WL 21032012, at *8. The

domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos,* 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos,* 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## B. Analysis

### 1. Commissioner's Decision

The ALJ noted that Claimant was born on May 12, 1994, and was therefore a "school-age child," as defined pursuant to 20 C.F.R. § 416.926a(g)(2), on January 21, 2005 (the date the application for benefits was filed). Claimant was an adolescent as of April 29, 2009 (the date of the ALJ's decision). The ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant had borderline intellectual functioning, asthma, and attention deficit hyperactivity disorder ("ADHD"), which the ALJ recognized as "severe" impairments under the Social Security Act. (T at 14).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix I (the "Listings"). (T at 14). The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled one or more of the impairments set forth in the Listings. (T at 14).

As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) marked limitation with regard to attending to and completing tasks; (3) less than marked limitation with respect to interacting with and relating to others; (4) less than marked limitation in moving about and manipulating objects; (5) less than marked limitation in the ability to care for himself; and (6) less than marked limitation with regard to health and physical well-being. (T at 16–23).

As such, the ALJ found that Claimant had not been disabled, as defined under the Social Security Act, from the date the application for benefits was filed to the date of the ALJ's decision. (T at 23). As noted above, the ALJ's decision became

the Commissioner's final decision on June 10, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 4–6).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. In support of this position, she offers five (5) principal arguments. First, Plaintiff argues that the ALJ failed to properly consider Claimant's oppositional defiance disorder ("ODD"). Second, Plaintiff contends that the ALJ did not adequately develop the record or properly apply the treating physician rule. Third, Plaintiff asserts that Claimant's ADHD and ODD meet or medically equal an impairment set forth in the Listings. Fourth, Plaintiff challenges the ALJ's functional equivalence assessment. Fifth, Plaintiff contends that the ALJ did not properly evaluate the credibility of the testimony provided by Plaintiff and Claimant. This Court will address each argument in turn.

### a. Failure to Address ODD

At step two of the sequential review process, the ALJ must consider whether the claimant had a medically determinable "severe" impairment or "severe" combination of impairments. An impairment or combination is "severe" if it imposes more than minimal functional limitations. 20 C.F.R. § 416.924(c).

█ In this case, Dr. Olson, Claimant's treating physician, indicated that he was treating Claimant for ADHD, ODD, and asthma. (T at 262). Dr. Olson explained that his diagnosis of ODD was supported by clinical findings of aggressiveness. (T at 257). The ALJ determined that Claimant had borderline intellectual functioning, asthma, and ADHD and that these were medically determinable "severe" impairments under the Social Security Act. (T at 14). However, the ALJ made no determi-

nation or mention of Dr. Olson's ODD diagnosis.

The Commissioner unpersuasively argues that Dr. Olson's ODD diagnosis can be disregarded because he was the only medical source to render such an opinion. In addition, the Commissioner asserts that the diagnosis was unsupported by any contemporaneous treating records. Even if true, these post-hoc rationalizations do not justify the ALJ's failure to address whether this impairment, diagnosed by Claimant's treating physician, was a "severe" impairment under the Act. *See Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir. 2005) (noting that court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself"); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)); see also *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)).

With that said, this Court is mindful that, because the ALJ found that Claimant had other severe impairments (i.e., borderline intellectual functioning, ADHD, and asthma) and continued with the balance of the sequential evaluation, an argument can be made that his error in failing to address the ODD diagnosis was harmless. *See Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987) ("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary

continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McCartney v. Commissioner of Social Sec.*, Civil Action No. 07–1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009) ("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); *Portorreal v. Astrue*, No. C.A. 07–296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

This Court is inclined toward the view that the ALJ's error in failing to specifically address the ODD diagnosis was harmless. In any event, because this Court finds that remand for calculation of benefits is warranted on other grounds, this question need not be resolved.

#### b. Development of Record/Treating Physician Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. 20 C.F.R. § 404.1527(d)(1)–(6); *see also de Roman*, 2003 WL 21511160, at *9; *Shaw*, 221 F.3d at 134; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir.1998).

In this case, Dr. Olson, Claimant's treating physician, completed a form in April of 2009, in which the doctor opined that Claimant had a moderate limitation with regard to acquiring and using information, marked limitation with respect to attending to and completing tasks, marked limitation as to interacting and relating with others, no limitations as to moving about and manipulating objects, and no limitations as to caring for himself. (T at 259–60).

The ALJ agreed with Dr. Olson's conclusion regarding the marked limitation in the domain of attending to and completing tasks, but reached a different conclusion as to Plaintiff's degree of limitation with respect to interacting and relating with others. (T at 18–23). The ALJ did not specifically state what weight he was assigning Dr. Olson's finding as to that do-

---

**3.** "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." *de Roman v. Barnhart*, No. 03Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

main, but he implicitly assigned Dr. Olson's opinion less than controlling weight by reaching a contrary conclusion regarding the degree of limitation. The Commissioner argues that the ALJ properly discounted Dr. Olson's finding because "form" reports are "weak evidence" and the degree of limitation assessed on the form was not entirely consistent with Dr. Olson's own treatment notes. This Court finds this argument unpersuasive.

First, Dr. Olson's finding of a marked limitation in the domain of interacting and relating with others, is quite consistent with the record, which (as outlined below) evidences substantial problems with aggression and social interaction. As discussed in greater detail below, Claimant was disciplined for taking other students' property, fighting, threatening a bus driver, and inappropriate physical contact. (T at 148, 150, 151–52, 154, 158, 159, 162, 163–65). The consultative psychiatric examiner noted a history of "difficulty with social behavior" and suggested an evaluation to consider "alternative educational placement" based upon Claimant's "intellectual delays and behavioral issues." (T at 247–48).

Second, if the ALJ perceived a conflict between Dr. Olson's notes and his findings, he should have re-contacted Dr. Olson to address the apparent inconsistency (particularly given the fact that Plaintiff was acting *pro se* at the hearing).

 The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*," to determine upon what information the treating source was basing his opinions. *Colegrove v. Comm'r of Soc. Sec.*, 399 F.Supp.2d 185, 196 (W.D.N.Y. 2005); *see also* 20 C.F.R. §§ 404.1212(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report

from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. *See Taylor v. Astrue*, No. CV–07–3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Accordingly, this Court finds that the ALJ did not properly apply the treating physician rule and his decision to discount the aspect of Dr. Olson's findings with regard to the interacting and relating with others domain was not supported by substantial evidence.

### c. Listed Impairments

 Impairments listed in Appendix 1 of the Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d. Cir.1995); *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

 The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing. *See Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

 To show that an impairment matches a Listing, the claimant must show

that his or her impairments meet all of the specified criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan,* 493 U.S. at 530, 110 S.Ct. 885. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b).

 Plaintiff contends that Claimant's ADHD and ODD satisfy the requirements of § 112.11 of the Listings. To meet the impairment set forth in § 112.11, the record must contain: (A) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity; (B) resulting in a marked impairment in at least two of the following: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence and pace. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, at Listing 112.11; *see also Brown v. Commissioner of Social Security,* 430 F.Supp.2d 102, 104 (W.D.N.Y.2005).

The ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (T at 14). In support of this finding, the ALJ referenced a single piece of evidence—an assessment provided by Manrique Quinto, a non-examining State Agency review physician, who opined that Claimant's impairments were severe, but did not meet or medically equal a Listing. (T at 249). This Court finds that the ALJ's conclusion was not supported by substantial evidence.

First, Dr. Quinto's assessment is dated May 6, 2005, nearly four (4) *years* prior to the date of the ALJ's decision (April 29, 2009). (T at 250). Second, Dr. Quinto, by his own admission, was unable to obtain Claimant's school records. (T at 254). As discussed in detail below, Claimant's school records contain significant evidence of marked limitations as to at least two of the domains of function. Third, as a non-examining physician, Dr. Quinto's opinion was of limited evidentiary value and was, but should not have been, afforded controlling weight under the circumstances. *See Griffith v. Astrue,* 08–CV–6004, 2009 WL 909630 at *9 (W.D.N.Y. March 31, 2009) ("The State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); *see also McClean v. Astrue,* 650 F.Supp.2d 223, 229 n. 2 (E.D.N.Y.2009).

Fourth, the State Agency review consultant's assessment was contradicted by the record evidence. To wit, the record indicated marked inattention, impulsiveness, and hyperactivity. In 2009, Jean Walsh, Claimant's teacher completed a teacher questionnaire in which she opined that Claimant required refocusing and 1:1 intervention in all classes, had numerous serious and very serious problems with regard to attending and completing tasks, and had a serious problem following classroom rules. (T at 103–105). Claimant required a highly structured environment and had significant difficulties with focus. (T at 112, 125).

A psychological report prepared in February 2009 under the supervision of Susan Grosso, a school psychologist, indicated that, even while on medication, Claimant nevertheless demonstrated "difficulties with distractibility, attention and implusivity." (T at 135). The ALJ acknowledged a marked limitation with regard to attending and completing tasks. (T at 18). The record also showed marked limitations with regard to social interaction. Claim-

ant's 2007 Individualized Education Plan ("IEP") indicated that he was frequently involved with negative peer interactions, including bullying. (T at 124). Claimant was disciplined for taking other students' property, fighting, threatening a bus driver, and inappropriate physical contact. (T at 148, 150, 151–52, 154, 158, 159, 162, 163–65).

Accordingly, for the reasons stated above, this Court finds that the ALJ's conclusion that Claimant did not have an impairment or combination of impairments that met or medically equaled the impairment set forth in § 112.11 of the Listings was not supported by substantial evidence.

### d. Functional Equivalence

If the claimant's impairments do not meet or medically equal one of the impairments set forth in the Listings, the Commissioner must still determine whether the impairment or combination of impairments are functionally equivalent to a Listing. Analysis of functionality is informed by consideration of how a claimant functions in six (6) main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1).

■ In the present case, the ALJ determined that Claimant had marked limitations in acquiring and using information, but less than marked limitations with respect to the balance of the domains. (T at 16–23). This Court finds that the ALJ's conclusion that Claimant had a less than marked limitation with respect to the domain of interacting and relating with others is not supported by substantial evidence.

With regard to the domain of interacting and relating with others, the Commissioner considers the claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criti-

cism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

A school-age child is expected to develop more lasting friendships with children who are his or her own age. The child should begin to understand how to work in groups to create projects and solve problems. The child should demonstrate an increasing ability to understand another's point of view and to tolerate differences. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

An adolescent should be able to initiate and develop friendships with children who are his or her own age and to relate appropriately to other children and adults, both individually and in groups. The adolescent should begin to be able to solve conflicts between himself/herself and peers or family members or adults outside his or her family. The adolescent should recognize that there are different social rules for friends and for acquaintances or adults. He or she should be able to intelligibly express feelings, ask for assistance in getting needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers). 20 C.F.R. § 416.926a(i)(2)(v).

Example of limitation functioning in this domain are: lack of close friends, avoidance or withdrawal, overanxiousness or fear of meeting new people or trying new experiences, difficulty playing games or sports with rules, and difficulty communicating with others. 20 C.F.R. § 416.926a(i)(3).

The record evidence established that Claimant had a marked limitation as to this domain. As noted above, Claimant was disciplined for taking other students' property, fighting, threatening a bus driver, and inappropriate physical contact. (T at 148, 150, 151–52, 154, 158, 159, 162, 163–65). The consultative psychiatric examiner noted a history of "difficulty with social behavior" and suggested an evaluation to consider "alternative educational placement" based upon Claimant's "intellectual delays and behavioral issues." (T at 247–48). Claimant's teacher, Ms. Webb, indicated an obvious problem seeking attention appropriately, noting that Claimant was sometimes physically aggressive. (T at 105). She also noted a serious, daily problem with respect to following classroom rules. (T at 105). The report prepared under the supervision of the school psychologist classified Claimant as "at risk" with regard to aggression, conduct problems, and social skills. (T at 141–42). Dr. Olson, Claimant's treating physician, found a marked impairment with regard to this domain. (T at 260). Plaintiff testified to Claimant's difficulty making friends and problems with social interaction. (T at 318–19).

In light of the above-referenced evidence, this Court concludes that the ALJ's finding as to this domain was not supported by substantial evidence. The record amply demonstrates a marked limitation with regard to the domain of interacting with and relating to others.

#### e. Credibility

Plaintiff also contends that the ALJ did not properly assess the credibility of the testimony offered by Plaintiff and Claimant at the hearing. In light of this Court's findings above and decision to remand the case for calculation of benefits, it is not necessary to resolve that issue.

### 3. Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Butts v. Barnhart,* 388 F.3d 377, 385–86 (2d Cir.2004) (quoting *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir.1999)); *see also Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the … substantial evidence standard."); *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. Accordingly, a remand is ordered solely for the calculation of benefits.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is GRANTED, that the Commissioner's Motion for Judgment on the Pleadings is DENIED, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for calculation of benefits.

It is so Ordered.

### V. ORDERS

It is hereby ORDERED that the Commissioner's motion for judgment on the pleadings is DENIED; and it is further

ORDERED, that Plaintiff's motion for judgment on the pleadings is GRANTED; and it is further;

ORDERED, that this case is remanded to the Commissioner of Social Security for the calculation of benefits.

It is so ORDERED.