Daniel J. GALLAGHER, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

15–CV–4861 (WFK)

United States District Court, E.D. New York.

Signed March 20, 2017

Filed 03/22/2017

Christopher James Bowes, Shoreham, NY, for Plaintiff.

Candace Scott Appleton, Brooklyn, NY, for Defendant.

## DECISION AND ORDER

WILLIAM F. KUNTZ, II, United States District Judge:

On August 18, 2015, Daniel Gallagher ("Plaintiff") filed this action under 42 U.S.C. § 405(g) seeking vacatur of the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") May 30, 2012 denial of his application for Social Security Disability ("SSD") benefits. *See* Compl., ECF No. 1; *see also* Pl.'s Mem. Law Supp. Mot. J. Pleadings ("Pl.'s Mot.") at 1, ECF No. 21. The parties filed cross-motions for judgment on the pleadings on July 13, 2016. ECF Nos. 18, 20. Plaintiff argues the Administrative Law Judge's ("ALJ") decision did not adequately account for certain of the medical evidence in the record, particularly Plaintiff's subjective complaints of physical discomfort, and requests that this action be remanded for additional administrative proceedings. Pl.'s Mot. at 1. The Commissioner contends the ALJ correctly applied the relevant legal standards and his decision is supported by substantial evidence. Def.'s Mem. Law. Supp. Mot. J. Pleadings ("Def.'s Mot.") at 1, ECF No. 19. For the reasons set forth below, Defendant's cross-motion is GRANTED and Plaintiff's cross-motion is DENIED.

## BACKGROUND

Plaintiff was born on November 8, 1957, and is a resident of Staten Island, New York. Compl. ¶ 4; Administrative Transcript ("Tr.") at 218, ECF No. 7. Plaintiff earned a GED and has a long work history, having worked as a corrections officer with the New York City Department of Correction from 1983 to 2003, and intermittently as a private security guard and driver between May 2005 and October 2011. Tr. at 28–29, 163. Plaintiff was diagnosed with prostate cancer on November 9, 2011, *id.* at 233, after blood tests conducted by his urologist showed Plaintiff's prostate-specific antigen levels were high, *id.* at 283, and a biopsy was performed, *id.* at 240–41. Plaintiff opted to treat his condition with a prostatectomy, which was conducted on March 6, 2012, but aborted due to complications, namely a small bowel strangulation that itself had to be treated surgically. *Id.* at 250–51, 463–64. Plaintiff was thereafter treated with radioactive seed implantation in May 2012. *Id.* at 224–25.

Plaintiff applied for SSD on May 30, 2012, contending he had been disabled as of November 1, 2011, as a result of his obesity and prostate cancer, particularly the side effects of his prostate cancer treatment, which included "urinary incontinence, frequency, and urgency." Compl. ¶ 7; *see also* Tr. at 130–40 (handwritten disability worksheet dated July 10, 2012).

After his initial application was denied by the Social Security Administration ("SSA") on August 15, 2012, *id.* at 59–61, Plaintiff appealed to an ALJ, *id.* at 11. ALJ Patrick Kilgannon held a hearing on March 7, 2014, where Plaintiff was repre-

sented by an attorney and testified on his own behalf. *Id.* at 23–39 (transcript of hearing). A vocational expert, Gerald Bellcheck, also testified at the hearing. *Id.* at 30–31, 35–38. In an opinion dated April 4, 2014, ALJ Kilgannon found Plaintiff did not have a disability within the meaning of the Social Security Act (the "Act") between November 1, 2011, and the date of the decision. *Id.* at 17. Plaintiff appealed the ALJ's decision to the Notice of Appeals Council, which declined to review his case on June 16, 2015. *Id.* at 1–4. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

▮ When a claimant challenges the Social Security Administration's ("SSA") denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g* 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (applying "substantial evidence" standard of review). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. of N.Y., Inc. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law drawn from those facts. *See Carballo ex rel. Cortes v. Apfel*, 34 F.Supp.2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim "has been fairly evaluated." *See Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983)).

▮ It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson*, 402 U.S. at 399, 91 S.Ct. 1420); *see also Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record[.]"). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." *Calzada v. Asture*, 753 F.Supp.2d 250, 268–69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

▮▮ To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue*, 942 F.Supp.2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada*, 753 F.Supp.2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper

legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999).

## II. Analysis

### A. Applicable Law

For the purposes of SSD benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See, e.g., Rosa*, 168 F.3d at 77 (laying out the five-step process for evaluating disability claims). The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's impairment does not

match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. *Id.* § 404.1520(a)(4)(v).

### B. The ALJ's Decision

The ALJ followed the five-step procedure in evaluating Plaintiff's claim and found the following: (1) Plaintiff had not engaged in substantial gainful activity since November 1, 2011, the alleged onset date of his disabling conditions; (2) Plaintiff has two "severe impairments," obesity and status post prostate cancer; (3) the record had not "establish[ed] that [Plaintiff] has symptoms, nor has any physician mentioned findings, that are the same or equivalent to the criteria" of the eligible impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically Listing 13.24, prostate gland carcinoma; (4) Plaintiff had the RFC to perform "the full range of medium work" as defined in 20 C.F.R. § 404.1567(c);[1] and (5) Plaintiff is capable of performing past relevant work as a "security guard/body guard." Tr. at 13–17. As a result, the ALJ found that Plaintiff was not disabled between November 1, 2011, and the date of the decision, April 4, 2014. *Id.* at 17.

In determining Plaintiff had the RFC to perform medium work, the ALJ considered Plaintiff's testimony, Plaintiff's medical records—particularly notes written by his treating physicians between April 2012 and December 2013—and the testimony of the vocational expert. *Id.* at 15–16, 30–31, 35–38. The ALJ found Plaintiff's testimony

---

1. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

concerning the intensity, persistence, and limiting effects of his symptoms was not credible to the extent it was inconsistent with the ALJ's RFC assessment, as his medical records did not support his testimony, particularly multiple treatment notes that indicated he had told his treating physicians he was "feel[ing] well" at follow-up appointments. *Id.* at 15–16. Relying on the vocational expert's testimony, the ALJ also concluded Plaintiff was capable of performing his past relevant work "as actually and generally performed," despite his claimed limitations. *Id.* at 17.

### C. The ALJ's Alleged Errors

Plaintiff contends the ALJ's decision is not supported by the evidence presented and points to several specific pieces of evidence that were allegedly overlooked or not given appropriate weight. Pl.'s Mot. at 13–15. First, Plaintiff argues the ALJ erred by failing to accord proper weight to Plaintiff's subjective complaints regarding the extent to which his urinary frequency interfered with his ability to perform past work. *Id.* at 13. Second, Plaintiff contends his subjective testimony should have been given greater weight because it was supported by his medical records, particularly his prescription medications, which are used to treat urinary frequency and incontinence. *Id.* at 14. Finally, Plaintiff contends the ALJ failed to take account of his long work history, which "justifies the interference that when he stopped working he did so for the reasons he testified to." *Id.* at 15 (quoting *Singletary v. Sec'y of Health, Educ. & Welfare*, 623 F.2d 217, 219 (2d Cir. 1980)).

### D. Substantial Evidence Supports the ALJ's Determination

#### a. The ALJ Properly Assessed the Medical Evidence

 In evaluating the available medical evidence as part of an application for disability benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]." *Clark*, 143 F.3d at 118. Specifically, the regulations state:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For these reasons, the opinion of a treating physician is given controlling weight on the issue of the nature and severity of a claimant's impairments, so long as the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." *Id.* If the ALJ does not give a treating physician's opinion controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the case record, then the ALJ must assess six factors to determine how much weight to afford the treating medical opinion and other medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors are: (1) whether the physician examined the claimant; (2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; (3) the evidence in support of each opinion, such as medical signs, laboratory findings, and more complete explanations; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the medical provider is a specialist; and (6) any other relevant factors. *Id.* §§ 404.1527(c), 416.927(c). Re-

mand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion" or when opinions from the ALJ "do not comprehensively set forth reasons for the weight assigned to a treating physician's. opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004),

 The ALJ in this instance carefully reviewed Plaintiff's medical records and weighed the evidence therein against Plaintiff's testimony as to his subjective complaints. In so doing, the ALJ credited the opinions of several of Plaintiff's treating physicians, namely: (a) Dr. Caner Dinlenc, a urologist, who in November 2012 noted Plaintiff's complaints of urinary and bowel frequency, found they were likely an after-effect of his radiation treatment that would clear up, and suggested Plaintiff stop consuming caffeine, Tr. at 16, 366–67; (b) Dr. Daniel Shasha, a radiation oncologist, who examined Plaintiff in April 2012 and noted he "denie[d] significant urinary symptoms," *id.* at 16, 463–65, and, in February 2014, when Plaintiff complained of "bowel urgency," found Plaintiff had radiation enteritis and recommended Plaintiff discontinue use of Metamucil, continue to take Imodium, and eat a low-carb, low-fiber diet, *id.* at 16, 473; and (c) Dr. Kanwardeep Aiden, Plaintiff's primary care physician, who saw Plaintiff approximately every three months, specifically indicated in April 2012, March 2013, and June 2013 that Plaintiff "feels well" and does not appear to have noted any urinary symptoms prior to September 2013, *id.* at 16, 438–53. Dr. Aiden's notes between March 2011 and September 2013 repeatedly indicated that Plaintiff was not experiencing any gastrointestinal ("GI") symptoms. *Id.* at 369–378, 448–453. Further, in December 2013, Dr. Aiden filled out a medical questionnaire, which noted Plaintiff's symptoms as being "impotence, bowel problems, and insomnia," indicated he could not provide a medical opinion on Plaintiff's ability to work, and directed most other substantive questions to Plaintiff's surgeon. *Id.* at 352–57.[2]

Having reviewed this evidence, the ALJ determined Plaintiff was "successfully treated for prostate cancer, and may have some lingering side effects from treatment" that do not "greatly limit his activities." *Id.* at 16. The ALJ particularly relied on the assessment of Dr. Dinlenc, who is the only physician to have noted Plaintiff's urinary symptoms until late 2013, and who concluded Plaintiff's irritable bladder would "settle down and get better." *Id.* (citing *id.* at 367). The ALJ's reliance on Dr. Dinlenc was reasonable, as Dr. Dinlenc had treated Plaintiff for prostate cancer, his opinion was consistent with the rest of

---

**2.** As noted by Defendant, the supplemental materials provided by Plaintiff are largely from a period after the ALJ made his decision and therefore were mostly not considered by the Appeals Council. Def.'s Mot at 18–19; *see* Supp. Admin. Tr. ("Supp. Tr."), ECF No. 8. The only supplemental medical record that pre-dates the ALJ's decision suggests Plaintiff consulted Dr. Michael Savino about his urinary symptoms, including dysuria, but indicates Plaintiff was also told, after receiving a cystoscopy, that he could return to physical activity in three days' time. *Id.* at 478–51. These supplemental records do not disrupt this Court's conclusion that the ALJ's determination was supported by substantial evi-

dence, as they do not indicate Plaintiff's urinary symptoms greatly limited his activities during the relevant period. If Plaintiff's condition deteriorated after the ALJ's decision, then he is entitled to reapply for SSD benefits for a subsequent period. *See Delvalle v. Colvin,* 14–CV–1779, 2015 WL 1381536, at *3 (S.D.N.Y. Mar. 25, 2015) (Engelmayer, J.) (considering evidence the plaintiff's conditions had deteriorated since her SSD application had been denied, finding it "immaterial because it concerns events after the Commissioner's decision to deny her benefits," and suggesting the plaintiff reapply for benefits for that later period).

the record—which contains few, if any, references to complaints of urinary frequency or incontinence—and there was no other cause to question Dr. Dinlenc's credibility. Further, while Plaintiff's treatment history indicates he complained of urinary symptoms on at least one occasion, it does not demonstrate Plaintiff's symptoms persisted over time or to a disabling degree.

Additionally, Plaintiff's physicians largely indicated that the conditions Plaintiff complained of were treatable with changes to Plaintiff's diet as well as over-the-counter and prescription medications, which provides a reasonable basis for the ALJ to determine that Plaintiff's condition would improve, if it had not already. According to Plaintiff, the fact that several of the prescription medications listed in his records—including Vesicare and Toviav—are used to treat overactive bladder and/or urinary incontinence, lends support to his subjective complaints. *See* Pl.'s Mot. at 14. But this evidence may also cut in favor of the ALJ's determination, as it indicates Plaintiff's condition can be managed by medications. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("Of course, a remedial impairment is not disabling." (citing *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir. 1983)); *cf. also Ortiz v. Astrue*, 875 F.Supp.2d 251, 260 (S.D.N.Y. 2012) (Buchwald, J.) (finding conditions that can be "controlled by medication" to be "non-severe" or "treatable conditions that present negligible constraints on … daily activity"). Consequently, it was reasonable for the ALJ to conclude, having considered the sum of the medical evidence presented, that Plaintiff's alleged conditions did not greatly limit his activities.

### b. The ALJ Properly Assessed Plaintiff's Credibility

 SSA regulations require an ALJ "to take the claimant's reports of pain and other limitations into account, but the ALJ is not obligated to accept the claim-

ant's subjective complaints without question." *Campbell v. Astrue*, 465 Fed.Appx. 4, 7 (2d Cir. 2012) (alterations omitted) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also Fontanarosa v. Colvin*, 13–CV–3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014) (Brodie, J.). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). "The ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa*, 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 Fed.Appx. 367, 370–71 (2d Cir. 2012)). "To the extent that a claimant's allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.' " *Id.* (quoting *Meadors v. Astrue*, 370 Fed.Appx. 179, 184 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii))).

In making a credibility determination, the ALJ must consider seven factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions

as a result of pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3).

■ Under this standard, the ALJ's conclusion that Plaintiff's "allegations of disability are not fully credible" is reasonable and will be upheld. Taken as a whole, there are a number of inconsistencies between the record and Plaintiff's testimony that support the ALJ's decision. For instance, Plaintiff indicates that the onset date of his disability was November 1, 2011, Tr. at 11, but he was not diagnosed with prostate cancer until November 9, 2011, *id.* at 233, and was not treated until the following year, *id.* at 250–51, 463–64. Further, as noted above, Plaintiff "denie[d] significant urinary symptoms" before his radiation treatment in mid–2012, *id.* at 16, 463–65, and there are few indications Plaintiff sought medical advice or intervention for his urinary symptoms between his treatment and April 2014, *see id.* at 366–67, 453; Supp. Tr. at 475–82. Similarly, Plaintiff contends his urinary frequency and incontinence have caused him to lose sleep, Tr. at 130–31, but Dr. Aiden noted repeatedly that Plaintiff actually suffers from chronic insomnia, for which he was prescribed Valium, *id.* at 438, 439, 441, 443, 446, 447, 448, 450, 451, 453, but which he does not claim as a disabling condition. The ALJ also noted that Plaintiff's symptoms do not appear to "greatly limit his activities," which is supported by Plaintiff's own submission that he prepares his own food, goes outside every day, shops for food four times per week, attends church, goes to the park, and goes for walks. *Id.* at 34, 131–36. Last, while Plaintiff's application suggests his conditions caused him to stop participating in gainful work, his records suggest he is a retiree and he was later laid off from a position as a personal driver. *Id.* at 463.

■ Given these inconsistencies, as well as the medical evidence presented, the ALJ's determination regarding Plaintiff's credibility was reasonable, despite Plaintiff's long work history. "Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility," and is not determinative where, as here, other elements of the record weigh against a "positive credibility findings." *Campbell*, 465 Fed.Appx. at 7 (upholding ALJ's credibility determination where plaintiff's complaints were inconsistent with the medical evidence).

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings, Dkt. 20, is DENIED, and Defendant's motion for judgment on the pleadings, Dkt. 18, is GRANTED. This matter is hereby dismissed and the Clerk of Court is respectfully instructed to close this case.

**SO ORDERED.**

